## State ex rel. Martin vs. Doyle.

MANDAMUS.  (1) *Officer required by law to draw a warrant " on his approval" of a certain report, not compellable by* mandamus.  (2) *Effect of his approving in part.*

CONSTITUTIONAL LAW.  (3) *Query as to legislative power to make an appropriation of money dependent on a certain contingency.*

1. Ch. 243 of 1873 provided for submitting to certain commissioners a claim of the relator against the state, and that, upon the filing of their report with the secretary of state, " on his approval thereof," he should draw his warrant for the amount. *Held,* that the act contemplated an exercise of *discretion* by the secretary in approving or refusing to approve the report, and there is no authority in that act, nor in ch. 152 of 1874, for payment of the amount awarded by the commissioners, without such approval.

2. The secretary of state approved the report of said commissioners as to a *part.* of the amount awarded (which was paid), and refused his approval as to the remainder. *Held,* that whether or not he mistook his duty in approving a part, his act cannot operate against the state as an approval of the whole award; and payment of the part disapproved will not be enforced by *mandamus.*

3. Whether, if the acts of 1873 and 1874 had submitted the relator's claim to the *final* arbitrament of the commissioners (who are not constitutional officers), and made the amount of an appropriation of money dependent on their determination, such acts would have been in conflict with sec. 27 of art. IV, sec. 2 of art. VI, or sec. 2 of art. VII of the state constitution, is not here decided.

State ex rel. Martin vs. Doyle.

APPLICATION for a *Mandamus.*

On the 20th of April, 1875, the relator applied to this court for an alternative writ of *mandamus* directed to *Peter Doyle,* as secretary of state. His affidavit, after stating his reasons for making the application in this court, makes the following case:

Pursuant to ch. 243, Laws of 1873, and ch. 152, Laws of 1874, the claim of the relator for damages against the state was duly submitted to three commissioners, duly appointed by the governor, to hear, try and determine such claim. These met at Janesville, June 16, 1874, and a majority of them tried and determined the claim, and duly filed with the secretary of state their award and report respecting it. This report, which is addressed to the secretary of state, after reciting the appointment of the commissioners and the hearing of proofs by them, states, in substance, that the facts alleged by the relator in his memorial to the legislature are substantially proved; that the relator entered into a contract with the state May 14, 1851, for the improvement of the Fox river, and faithfully performed his part of the contract, whereby the state was greatly benefited and was relieved from certain liabilities; that, by reason of the nonfulfillment of said contract on the part of the state during the years 1852 and 1853, the relator suffered damage exceeding $35,000, to which he is justly entitled; and that deducting therefrom $25,000, the amount of a certain bond of indemnity executed by said *Martin* to the state, and allowing him the balance with interest, as claimed in his memorial, furnishes a just basis of settlement. "We, therefore," the report continues, "make and publish as our award in the premises, that the state shall pay to *Morgan L. Martin,* in full satisfaction of all damages sustained by him under his contract above referred to, the sum of $10,000, and interest thereon, at the rate of seven per cent. per annum, from July 6, 1853, to this date, amounting in all to the sum of $24,678.56; and that the bond of indemnity executed by said *Martin* to the state on said date be delivered up to be cancelled."

After this award had been filed with the secretary of state, he annexed thereto the following determination: "Madison, July 2, 1874. The foregoing award of $10,000 is approved, but the award of interest is not approved, except the amount thereof accruing from the 5th day of February, A. D. 1873, the date of the claimant's application to the legislature, to the date of the award of the commissioners. The total sum allowed and approved being $10,974.16. PETER DOYLE, Secretary of State."

Thereupon said secretary of state drew his warrant upon the state treasury for, and paid to the relator, $10,974.16, but declined, and has since refused, to draw his warrant for or allow the relator any further sum, on the ground wholly that, the said award being subject to his approval, the interest awarded on said claim, except as stated by him in his indorsement on said report, ought not to be allowed to the relator.

A writ was issued pursuant to the prayer of the relator, requiring the respondent to audit, allow, and draw his warrant on the state treasurer in favor of the relator for $13,704.40, or to show cause, etc.

The respondent now moved to quash the writ, on the ground that the petition upon which it was issued did not state facts sufficient to entitle the relator thereto.

*The Attorney General*, for the motion:

1. It appears upon the face of the papers that the award was never approved by the secretary of state. The approval of the secretary was a condition precedent to the payment of any money. The words requiring his approval were inserted for the protection of the state, and they must be given some signification; they must be construed in their ordinary and natural sense. *Harrington v. Smith*, 28 Wis., 43; 22 id., 669; 7 Mass., 523, 524; Dwarris on Stats., 196. The word "approve" implies examination, judgment, judicial investigation, and excludes the idea of a mere ministerial act. See definition by Webster and Worcester; Crabb, p. 156; *Heron v. Davis*, 3 Bosw., 336; 3 Opin-

ions A. G., 635. 2. By the constitution and laws of the state, the secretary is made *ex officio* the auditor. It was his duty to pass upon this claim, and it is doubtful if the legislature could divest him of the power. Constitution, art. VI, sec. 2; Tay. Stats., 266, § 30; *State v. Hastings*, 10 Wis., 525. 3. The right to approve is plenary; it may extend to the whole or a part; and the part approved may be paid. 4. The interest is properly no part of the claim; it is a mere incident, sometimes given by way of damages for the detention of the money; never until liquidated. It cannot be recovered when the principal has been paid. *Jacot v. Emmett*, 11 Paige, 142; *Stevens v. Barringer*, 13 Wend., 639. But as against the state interest is not recoverable; certainly not till after demand and refusal. *Georgia Claims*, 1 Opinions A. G., 554; *Giles' Case*, id., 268; *Wood's Case*, 3 id., 635; *Cogswell Case*, 4 id., 14, 136; Dev. C. C., 93–96; *People v. Canal Comm'rs*, 5 Denio, 401. 5. The acceptance of the principal without objection precludes a recovery of the balance, the interest being but an incident. 11 Paige, 142; 13 Wend., 639. 6. All the authorities hold that if any discretion is vested in the officer, *mandamus* will not lie. The office of the writ is to set the inferior tribunal in motion, not to control its discretion.

*Hudd & Wigman, contra:*

1. *Mandamus* is the proper and only remedy allowed the relator, and the application will be heard by this court for the reasons stated in the petition. *State ex rel. v. Fairchild*, 22 Wis., 110; 24 id., 196. 2. The whole question turns upon the construction of sec. 2, ch. 243, Laws of 1874. Statutes are to be construed according to the intent of the legislature, and that intent may be gathered from the surrounding circumstances. *Ogden v. Glidden*, 9 Wis., 46; *Blunt v. Walker*, 11 id., 334; 10 id., 136; 13 id., 57; 4 Chand., 65. Where a new power is given by an affirmative statute to a certain person, or class of persons, by the designation of those persons all other persons are in general excluded. *Conroe v. Bull*, 7 Wis., 408. The

legislature could not have intended to take from the three arbitrators the power to *hear, try and determine,* which was seemingly conferred upon them, and to vest a controlling voice in the secretary of state. Courts will not give such a construction to a statute as will lead to an absurdity as well as injustice. 22 Wis., 669; 28 id., 43; id., 293; 27 id., 478; 31 id., 451. 3. The approval spoken of can only refer to the form and sufficiency of the report required to be certified to the office of the secretary of state. The secretary, in this case, as in the case of any other appropriation act, is to see that the proper voucher is filed in his office; that being done, his duty is but ministerial — to draw the warrant on the state treasurer. 4. No other or stronger duties are imposed upon the secretary by the word "approval" than by secs. 33, 34, ch. 10, R. S. *State v. Hastings,* 10 Wis., 525. 5. Arbitrations and awards are liberally construed, and, if possible, so as to make them effective. *Md. & Del. R. R. Co. v. Porter,* 19 Md., 458; 5 Gill (Md.), 129; *Ross v. Watt,* 16 Ill., 99; *Garitee v. Carter,* 16 Md., 309; 1 Barb. Ch., 173; 7 Cow., 185; 3 Vt., 535; 5 id., 503; 6 id., 529. The duty of the secretary was an entire one, to approve of the entire report. Even a court of justice, in like cases, would have no power to review, set aside, or change the award of the arbitrators. See cases cited above.

*S. U. Pinney,* of counsel for relator:

1. The legislation under which the award was made is not subject to any constitutional objection as vesting a part of "the judicial power of the state" in the arbitrators. "The judicial power of the state" is that which is vested in and to be exercised by the *courts* according to the course of the common law, as modified by statutes. It refers to the judicial powers belonging to those tribunals intrusted with what is known as "due process of law." *Murray's Lessee v. Hoboken Land Imp. Co.,* 18 How. (U. S.), 272, 275; *United States v. Ferreira,* 13 id., 40; *Ex parte Vallandigham,* 1 Wall., 243. The award in this case must be regarded as a valid adjust-

ment of a claim to be settled upon equitable principles. After the award, the claim became a debt from the state, as certain in character and amount as a state bond; and in regard to it the secretary, as auditor, had a well settled duty to perform. The act neither gave him any other power nor excluded him from the performance of any constitutional duty. Since the adjustment of the claim was made by the act to depend upon *equitable* principles, the secretary, as auditor, had no jurisdiction to act until the claim was adjusted. *Stringham v. Supervisors*, 24 Wis., 594; *Hastings' Case*, 10 id., 531. · The proceeding was in effect an arbitration to which the state had the power to submit. Caldwell on Arb., 16; *Brady v. Mayor of Brooklyn*, 1 Barb., 584; *Hollister v. Pawlett*, 43 Vt., 425; *The Pea Patch Island Case*, 1 Wall. Jr. C. C., appendix. It was not the intention of the constitution to restrict the power of the state in respect to arbitration. The validity of such proceedings rests upon the *consent* of the parties. And the same public policy which sustains them between individuals, will sustain them between the state and one of its citizens. 2. Nor is the legislation on which the award was based any invasion of the functions and duties of the secretary of state as state auditor. The subject matter which was under consideration was not an *account* or a *claim*, in the ordinary sense of the term, as applied to *claims* or *demands* against a state or municipal corporation, but a claim for *damages* under a contract, upon which the arbitrators were to make such an award as they might " deem just and *equitable.*" An auditor is " an officer whose duty is to examine the *accounts* of officers who have received and disbursed public moneys by lawful authority." Bouv. Law Dic., tit. "Auditor;" *State v. Hastings*, 10 Wis., 530; *Stringham v. Supervisors*, 24 id., 594. The legislature is vested with the paramount control and direction of public concerns, while the auditor is charged only with the ordinary routine duty of an office relating only to the ordinary transactions in the administration of the affairs of the state government. If

claims for *unliquidated* damages, to be adjusted on *equitable* principles, arise, the auditor does not represent the sovereignty of the state in respect to them.    The legislature has provided for bringing such suits in the supreme court, but only in case the legislature has first *refused* to do justice in the premises. Const. of Wis., art. IV, sec. 27; R. S., ch. 157, sec. 1; Laws of 1860, ch. 326; *Lyman v. Warren*, 12 Mass., 412; *Field v. Holland*, 6 Cranch, 8; Bac. Ab., "Accompt, F."; 5 Binn., 433; Bouv. Law Dic.; *Whitwell v. Willard*, 1 Met., 216.    3. The secretary approved the award.    It was an entirety, indivisible in law, and the approval of a part is an approval of the whole. In this case the amount paid and received was for a part only, and herein lies the distinction between this case and those of *Pulling v. Columbia County*, 3 Wis., 337; *Calkins v. State*, 13 id., 389; *Sholes v. State*, 2 Pin., 499.    The award, being fair on its face, cannot be impeached in a collateral manner.

RYAN, C. J.    It is unnecessary to pass upon the grave questions suggested on the argument, whether the legislature had power to pass chapters 243 of 1873, and 152 of 1874, submitting the relator's claim to the final arbitrament of commissioners, approved by the secretary of state, and making the amount of an appropriation of public money dependent on the determination of persons not constitutional officers; and how far such a submission is in conflict with sec. 27, art. IV of the constitution; or with sec. 2, art. VII (*Att'y Gen. v. McDonald*, 3 Wis., 805; *Gough v. Dorsey*, 27 id., 119); or with sec. 2, art. VI (*State v. Hastings*, 10 id., 525).

For, conceding the power of the legislature, there appears to us to be no doubt that the true construction of sec. 2 of the act of 1873 makes the report of the commissioners dependent for validity on the approval of the secretary of state, and does not authorize payment of the amount reported without such approval.    The terms of the section are express and positive that, upon the filing of the report with the secretary, " on his

approval thereof, he shall draw his warrant," etc. It is not claimed that the payment is authorized by any general statute, and, without the approval of the secretary, there is no authority for it in this act.

We can see no ground for holding that the act of 1874 dispenses with the secretary's approval. That act relates solely to the duty of the commissioners. If we could hold it as doing away with the secretary's approval, we do not see how that could aid the relator. For the power to approve and to pay in the act of 1873, is so connected and dependent in terms, that a constructive repeal of part would appear to carry with it the whole. But there is no conflict between the two provisions, which are in entire harmony.

It was argued for the relator, that the approval required by the act is merely formal, giving the secretary no discretion; that the legislature had provided for the liquidation of the amount otherwise; and that, when so liquidated, it was on the footing of a sum certain appropriated by law, which it was the duty of the secretary, without discretion, to audit. We cannot bring ourselves to believe that the legislature so intended. In practice, the secretary audits all appropriations, which are paid only on his warrant. But the legislature does not, therefore, make positive and specific appropriations subject in terms to his approval. Such language is not usual; and when used, it must be with a purpose, to which it is our duty to give effect. It must be intended to mean something more than mere form. And it appears to us that the intention is not far to seek. Here was, to say the least, an unusual and dangerous mode of appropriation. It seems wise to have made it subject to the discretion of the auditing officer of the state. And we cannot but hold that, in providing for his approval as a condition of payment, the legislature intended, for the protection of the state, to confer upon that officer power to control the payment, by his approval or disapproval of the amount reported.

The secretary approved the report as to part of the amount, and refused to approve it as to other part. Whether or not he mistook his power in doing this, certain it is that he could not bind the state beyond his actual approval. His approval of part cannot operate against the state as an approval of the whole, or bar the state from insisting on his refusal to approve the rest. The part approved has been paid. The part of which we are asked to enforce payment by this writ, has not been approved. We surely cannot compel the secretary to pay against his disapproval what is in terms payable only on his approval.

For these reasons, the motion to quash the alternative writ must prevail.

*By the Court.* — Motion granted, and writ quashed.