TRAPP, *State Auditor,* v. COOK CONST. CO.

No. 1090.   Opinion Filed November 2, 1909.

(105 Pac. 667.)

1.  **COLLEGES AND UNIVERSITIES—Regents—Agricultural Board—Constitutional Powers.** Section 31 of article 6, page 203, Snyder's Constitution of Oklahoma, providing that the board of agriculture therein created shall be the board of regents of the state agricultural and mechanical college, and "shall discharge such other duties * * * as may be provided by law," vests the said board of agriculture with the same power. jurisdiction. and authority that was possessed by the board of regents of the agricultural and mechanical college at the time of the adoption of the Constitution.

2.  **COLLEGES AND UNIVERSITIES—Officers—Duties—Constitutional Provisions—Conflict.** That portion of article 1, c. 37. p. 563, Sess. Laws Okla. 1909, defining the duties of the state board of public affairs, so far as it attempts to confer upon the board of public affairs the powers and duties vested in the board of regents of the state agricultural and mechanical college as the same were conferred by the Constitution, is void.

3.  **CONSTITUTIONAL LAW—Statutes—Intent.** A thing within the intent of a constitutional enactment is, for all purposes, to be regarded within the words and terms of the Constitution; and a legislative enactment, evading the terms and clearly expressed or necessarily implied purposes of the Constitution, is as clearly void as if in express terms forbidden.

(Syllabus by the Court.)

*Error from District Court, Logan County; A. H. Huston, Judge.*

Action by the Cook Construction Company against M. E. Trapp, State Auditor. Decree for plaintiff, and defendant brings error. Affirmed.

*Charles West,* Atty. Gen., for plaintiff in error.—Citing: *Mayor, etc., of Baltimore v. State ex rel.,* 15 Md. 377; *City of Pond Creek v. Haskell,* 21 Okla. 711; *Board of Trustees v. Board of Supervisors,* 75 Ill. 184; *State v. Babcock* (Neb.) 24 N. W. 202; *Jewell Nursery Co. v. State,* 4 S. Dak. 213; *Smith v. Westcott* (R. I.) 22 Atl. 280; *State ex rel. v. Bronson* (Mo. App.) 21 S. W. 1125; *State ex rel. v. Huston,* 21 Okla. 807.

*Jno. H. Burford,* for defendant in error.—Citing: *People v. Refining Co.,* 121 N. Y. 589; *State ex rel. v. Hastings,* 10 Wis. 468; *People v. Draper,* 15 N. Y. 532; *State v. Arrington,* 18 Nev. 415; *State ex rel. v. Cunningham,* 82 Wis. 39; *Opinion of the Judges* (Neb.) 50 N. W. 276; Cooley, Const. Lim. (7th Ed.) 98; *Sterling v. Regents,* 97 Mich. 246.

DUNN, J.  The question that arises and requires our consideration and determination in this case, as stated by the Attorney General in his brief, is whether the law creating the state board of public affairs vested in it the power and authority to contract for and erect buildings for the board of agriculture acting as a board of regents of the state agricultural and mechanical college, and also to audit the accounts growing out of the exercise of such authority. Involved in the determination thereof is the construction of the following sections of the Constitution and statutes of the territory and state: Section 31 of article 6 of the Constitution, providing for and creating the board of agriculture, fixes its membership at 11 members, all of whom are to be farmers, and provides that:

"Said board shall be maintained as a part of the state government, and shall have jurisdiction over all matters affecting animal industry and animal quarantine regulations, and shall be the board of regents of all state agricultural and mechanical colleges, and shall discharge such other duties and receive such compensation as may be provided by law."

October 27, 1890, the legislative assembly of the territory of Oklahoma accepted on the part of the territory the provisions of an act of Congress providing for the establishment of agricultural experiment stations, and obligated the territory to comply with all of the provisions thereof. Section 276, art. 18, c. 77 (section 6404), Wilson's Rev. & Ann. St. Okla. 1903. Thereafter an act was passed providing for the location and establishment of an agricultural and mechanical college, which took effect December 25, 1890, and the government and management of the same was vested in a board of regents with the statutory appellation of "agricultural and mechanical college board of regents." Among other things with special reference to their application to the industries of life, agriculture was declared to be one of the leading objects of said college. Section 280, art. 18, c. 77 (section 6408), Wilson's Rev. & Ann. St. Okla. 1903. It was authorized by its regents to take title to real estate, enter into contracts, locate buildings, and do all things necessary to make the college effective as an educational institution. Section 283, art. 18, c. 77 (section 6411), Wilson's Rev. & Ann. St. Okla. 1903. The duties of said board were further and more specifically defined in section 287, art. 18, c. 77 (section 6415), Wilson's Rev. & Ann. St. Okla. 1903, as follows:

"The said board of regents shall direct the disposition of all moneys appropriated by the territorial legislature or by Congress, or funds arising from the sale of bonds provided for in this act for the agricultural college or experimental station for Oklahoma Territory, and shall have supervision or charge of the construction of all buildings provided for said college or farm. The board of regents shall have power to employ a president and necessary teachers, instructors and assistants to conduct said school and carry on the experimental farm connected therewith, and to appoint a superintendent of construction of all buildings, who shall receive three dollars per day for each day actually and necessarily engaged in the discharge of his duties not to exceed fifty days in any one year, which sum shall be paid out of the territorial treasury upon the vouchers of said board. The said board shall audit all accounts against the funds appropriated for the use of the agricultural college and experiment station, and the territorial auditor shall issue his warrant upon the territorial treasurer for the amount of all

accounts which shall have been audited and allowed by the board of regents and attested by the president and secretary of the same."

Other extensive executive duties in connection with the administration of affairs of the college tending to give to the said board the entire supervision of affairs of the school are granted by the act; but consideration of the foregoing, which are specifically enumerated, are deemed to be sufficient for the purpose of the case now before us.

In the petition of defendant in error, who was plaintiff in the court below, it is alleged that, pursuant to a contract entered into under the authority of an act of the Legislature approved June 10, 1908 (Laws 1907-08, p. 93, c. 5, art. 17), providing for the erection of certain buildings to be used by the agricultural and mechanical college, it had earned certain sums of money which were due it, and that the vouchers therefor had been duly approved and properly attested by the board of regents of the said college, but that when presented by the plaintiff to M. E. Trapp, Esq., Auditor of the State of Oklahoma, he declined to draw a warrant upon the State Treasurer for the amount due plaintiff as shown by the said approved voucher, notwithstanding there were at that time sufficient funds in the hands of the treasurer appropriated to that purpose to more than pay said claim, and that the sole cause given for this refusal was that the said voucher had not been approved by the state board of public affairs. The second legislative assembly of the state of Oklahoma created the state board of public affairs. Sess. Laws 1909, p. 563. Section 4 of this act provides that:

"Said board shall have charge of the construction, repair, maintenance, insurance and operation of all buildings owned, used or occupied by or on behalf of the state; they shall have authority to purchase all material and perform all other duties necessary in the construction, repair or maintenance of all such buildings; they shall make all necessary contracts by or on behalf of the state for any buildings or rooms rented for the use of the state or any of the officers thereof."

Section 6 provides:

"All claims against the state for any of the items mentioned in this act, shall, before payment, be presented in the form required

by said board and be audited and approved by said board under such rules and regulations as they may prescribe."

Section 8 provides:

"All duties prescribed in this act, which are now performed by or vested in any other board, officer or other authority, are hereby vested in and shall be performed by said state board of public affairs in the same manner as the law now requires such other boards, officers or authorities to perform them.  *   *   * "

From the foregoing it will be seen that the conflict arises out of the question of whether or not the Legislature had the constitutional authority to pass the act just referred to as the same would be applied to the board of agriculture, constituted the board of regents of the agricultural and mechanical college. or whether the designation by the Constitution of the board of agriculture as the board of regents of this college carried with it irrevocably, so far as the Legislature was concerned, the power and authority here sought to be exercised to contract and erect buildings for the state agricultural and mechanical college, and the auditing and direction of the disposition of all moneys appropriated therefor.  The Constitution does not specifically enumerate the duties and authority of this board; but that it contemplated that some duties should follow its creation, and that certain ones were 'in the minds of the convention and the people, is manifest from the language of the section cited, which provides that the board "shall discharge such other duties   *   *   *  as may be provided by law."  If certain duties did follow its creation and were not within the minds of the framers of this section of the Constitution, it seems clear to us that the word "other" would not have been used, but the phrase would have read that the board "shall discharge such duties   *   *   * as may be provided by law."   Chief Justice Elliott of the Supreme Court of Indiana, in the case of *State ex rel. Hovey v. Noble et al.,* 118 Ind. 350, 21 N. E. 244, 4 L. R. A. 101, 10 Am. St. Rep. 143, of the language of a written Constitution, says:

"Written Constitutions are the product of deliberate thought. Words are hammered and crystallized into strength, and if ever there is power in words it is in the words of a written Constitution. Behind the words is the power of a free people operating through

the medium of a constitutional convention, called together for the purpose of framing a fundamental and inviolable system of government. Of all governmental instruments it is the most solemn and powerful. Its grants are unalterable; its delegations of power unchangeable and its commands supreme. Until the people themselves shall change or annul their Constitution, all must obey its mandates."

Necessarily the Constitution was written and adopted with the conditions which existed at that time in view. All courts say so, and this court had occasion in a measure to consider this question, as it related to the right of trial by jury, in the case of *State ex rel. Attorney General v. Cobb, ante,* p. 662, 104 Pac. 361, wherein we held:

"The right of trial by jury declared inviolable by section 19, art. 2, p. 83, Snyder's Const. Okla., except as modified by the Constitution itself, means the right as it existed in the territory at the time of the adoption of the Constitution."

This conclusion on our part is supported by an unbroken line of authorities from practically every state in the Union which has had occasion to consider the question, and a large number of them are noted in the opinion. We cannot see that the principle there involved is essentially different from the one now before us.

The question then is: Did the board of agriculture, being constituted the board of regents of the agricultural and mechanical college, thereby have fixed and vested in it, by the language used, the duties, powers, and authority of the established territorial board of regents whose place it took, as the same existed at the time of the adoption of the Constitution? If so, necessarily the Legislature could not divest it of these powers nor any part thereof, for, if it could lawfully take a part, it could from time to time take more, and ultimately take all, and thereby defeat the will of the people who fixed the status of this board in the organic law of the state. As we view it, additional duties may be required, but none vested by the Constitution may be taken away by the Legislature. In this conclusion we find support in the adjudications of a number of courts and authorities, of which we note the following: Cooley's Constitutional Limitations (7th Ed.) p. 98; *State ex rel.*

*Crawford v. Hastings,* 10 Wis. 525; *State ex rel. Kennedy v. Brust,* 26 Wis. 412, 7 Am. Rep. 84; *Dahnke v. People,* 168 Ill. 102, 48 N. E. 137, 39 L. R. A. 197; *People ex rel. McEwan v. Keeler,* 29 Hun. 175; *People ex rel. Bolton et al. v. Albertson,* 55 N. Y. 50; *People ex rel. Kingsland v. Bradley,* 42 How. Prac. (N. Y.) 423; *People v. Raymond,* 37 N. Y. 428; *In re Railroad Commissioners,* 15 Neb. 679, 50 N. W. 276; *McCabe et al. v. Mazzuchelli,* 13 Wis. 478; *State ex rel. Marlin v. Doyle,* 38 Wis. 92; *City of Watertown v. Robinson,* 69 Wis. 230, 34 N. W. 139; *State ex rel. Raymer v. Cunningham,* 82 Wis. 39, 51 N. W. 1133; *State ex rel. Sweet et al. v. Cunningham et al.,* 88 Wis. 81, 57 N. W. 1119, 59 N. W. 503.

Section 2 of article 6 of the Constitution of the state of Wisconsin provided for a Secretary of State, and, among other things, declared that "he shall be *ex officio* auditor." The Legislature of that state provided by an act for an officer entitled a "comptroller," and vested in him the authority to "examine and pass upon all claims and accounts audited by the Secretary of State, and if he shall find the same properly verified or proved and authorized by law to be audited, he shall certify that fact upon such claim or account." Herein, it will be noted, is presented practically the same question as is presented in the case at bar, except in our judgment our Constitution makes more clear and apparent the duties which would inhere in the board of agriculture as a board of regents than does the language of the Constitution of Wisconsin, wherein the Secretary of State is constituted auditor. In the consideration of this question when it was presented the Supreme Court of Wisconsin, in an opinion prepared by the able jurist Chief Justice Dixon, says, in the case of *State ex rel. Crawford v. Hastings, supra*:

"The question arises whether, under the foregoing provision of the Constitution, the Legislature have the power to create a second auditor or officer authorized to perform the same duties, whose concurrence is necessary before the acts of the constitutional auditor shall take effect. We think they have not, and that the functions of that officer cannot, in whole or in part, be transferred to, or be exercised concurrently, or otherwise, by any person or offi-

cer. It falls directly within the rule that the express mention of one thing implies the exclusion of another. *Expressio unius est exclusio alterius.* This rule applies as forcibly to the construc- tions of written Constitutions as other instruments, and, if its observance ought in any degree to depend upon the character or importance of the instrument under consideration, then no other cases demand so rigid an adherence to it. A Consti- tution being the paramount law of a state, designed to separate the powers of government and to define their extent and limit their exercise by the several departments, as well as to secure and pro- tect private rights, no other instrument is of equal significance. It has been very properly defined to be a legislative act of the people themselves in their sovereign capacity, and, when the people have declared by it that certain powers shall be possessed and duties per- formed by a particular officer or department, their exercise and dis- charge by any other officer or department are forbidden by a neces- sary and unavoidable implication. Every positive delegation of power to one officer or department implies a negation of its exercise by any other officer, department, or person. If it did not, the whole constitutional fabric might be undermined and destroyed. This result could be as effectually accomplished by the creation of new officers and departments exercising the same power and jurisdic- tion as by the direct and formal abrogation of those now existing, and, although the exercise of this power by the Legislature is nowhere expressly prohibited, nevertheless they cannot do so. The people having in their sovereign capacity exerted the power and determined who shall be their auditor, there is nothing left for the Legislature to act upon. This principle or rule of construing Con- stitutions has been often laid down and acted upon by courts. It is fully sustained by the following cases recently decided by the Court of Appeals of New York: *Barto v. Himrod,* 8 N. Y. 483, 59 Am. Dec. 506; *Sill v. Village of Corning,* 15 N. Y. 297; *People v. Draper,* 15 N. Y. 532. In this last case the court, after observing that plenary power in the Legislature, for all the purposes of civil government, is the rule, and a prohibition to exercise a particular power an exception, and that the Constitution contains but few positive restraints upon the legislative powers, say: 'But the affirm- ative prescriptions, and the general arrangement of the Constitu- tion, are far more fruitful of restraints upon the Legislature. Every positive direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision. The form of the government, the grant of

legislative powers itself, the organization of executive authority, the erection of the principal courts of justice, create implied limitations upon lawmaking authority, as strong as though a negation was expressed in 'each instance.' This rule of construction extends to every part of the instrument, and, if a violation of it is allowed in the case of the auditor, it is difficult to see why it should not be in the case of any other officer or department. Thus, the Legislature might with equal propriety create new courts of justice, usurping and exercising the same power and jurisdiction as those established by the people, and a new executive, to correct the mistakes and control the action of the one chosen by them. It seems to us clear that the Legislature could do neither, and that so much of the act under consideration as attempts to transfer to the so-called comptroller the functions of auditor, and to clothe him with authority to control or reverse tne acts of that officer, is unconstitutional and void."

This case is cited approvingly by the Supreme Court of Wisconsin and other courts in a large number of cases which follow it. Among them may be noted the case of *State ex rel. Kennedy v. Brunst, supra.* Section 4 of article 6 of the Constitution of Wisconsin provides for the office of sheriff. Nowhere within it does it define the powers, rights, or duties which shall attach to such office. Thereafter an act of the Legislature provided for a house of correction for the county of Milwaukee and constituted thereof the jail of the county; and made the inspector of this house of correction *ex officio* the jailer of the county, giving to him the exclusive charge and custody of the jail and of the prisoners in the same. A contest ensued between this inspector and the sheriff; the latter contending that the Legislature lacked the power to strip from him as sheriff his rights as jailer urging that, when the Constitution provided for a sheriff, it contemplated the character of office with the duties that existed at the time of the adoption of the Constitution, and of this the Supreme Court, in the syllabus, said:

"Under our state Constitution (which provides for the election of sheriffs by the electors of the county) the Legislature cannot transfer to other officers, elected by the board of supervisors, important powers and functions which from time immemorial have belonged to the office of sheriff."

In the consideration thereof, Justice Cole, who prepared the opinion for the court, said:

"Now, it is quite true that the Constitution nowhere defines what powers, rights, and duties shall attach or belong to the office of sheriff; but there can be no doubt that the framers of the Constitution had reference to the office with those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the Constitution was adopted. Among those duties, one of the most characteristic and well acknowledged was the custody of the common jail and of the prisoners therein. This is apparent from the statutes and authorities cited by the counsel for the respondent, and it seems to us unreasonable to hold, under a Constitution which carefully provides for the election of sheriffs, fixes the term of office, etc., that the Legislature may detach from the office its duties and functions, and transfer those duties to another officer. In this case it is said that the Legislature has attempted to take the largest share of the duties of sheriff, in point of responsibility and emolument, and to commit it to an officer selected by the county board of supervisors. If the Legislature can do this, why may it not deprive the sheriff of all the duties and powers appertaining to his office, and transfer them to some officer not chosen by the electors? It would certainly be a very idle provision of the Constitution to secure the electors the right to choose their sheriffs, and at the same time leave to the Legislature the power to detach from the office of sheriff all the duties and functions by law belonging to that office when the Constitution was adopted, and commit those duties to some officer not elected by the people; for this would be to secure to the electors the right to choose a sheriff in name merely, while all the duties and substance of the office might be exercised by and belong to an officer appointed by some other authority. We therefore conclude that it was not competent for the Legislature to take from the constitutional office of sheriff a part of the office itself, and transfer it to an officer appointed in a different manner, and holding the office by a different tenure from that which was provided for in the Constitution."

The foregoing quotations are sufficient in our judgment to show the force given provisions of this character where they have been brought into question. The other authorities we have cited likewise support and shed additional light on the subject. The underlying reason therefore is forcibly set forth in ·the case of

*People ex rel. Bolton et al. v. Albertson, supra,* wherein the Court of Appeals of New York, in its consideration, said:

"A written Constitution must be interpreted and effect given to it as the paramount law of the land, equally obligatory upon the Legislature as upon other departments of government and individual citizens, according to its spirit and the intent of its framers, as indicated by its terms. An act violating the true intent and meaning of the instrument, although not within the letter, is as much within the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express ·terms forbidden. A thing within the intent of a Constitution or statutory enactment is for all purposes, to be regarded as within the words and terms of the law. A written Constitution would be of little avail as a practical and useful restraint upon the different departments of government, if a literal reading only was to be given it, to the exclusion of all necessary implication, and the clear intent ignored, and slight evasions or acts, palpably in evasion of its spirit, should be sustained as not repugnant to it. The restraints of the Constitution upon the several departments, among which the various powers of government are distributed, cannot be lessened or diminished by inference and implication; and usurpations of power, or the exercise of power in disregard of the express provision or plain intent of the instrument, as necessarily implied from all its terms, cannot be sustained under the pretense of a liberal or enlightened interpretation, or in· deference to the judgment of the Legislature, or some supposed necessity, the result of a changed condition of affairs. 1 Kent's Com. 162; *Barto v. Himrod,* 8 N. Y. 483, 59 Am. Dec. 506; *Taylor v. Porter,* 4 Hill, 144, 40 Am. Dec. 274; *Warner v. People,* 2 Denio, 272, 43 Am.. Dec. 740; *People v. N. Y. C. R. R. Co.,* 24 N. Y. 485; *Schenectady Observatory v. Allen,* 42 N. Y. 404."

Counsel for both parties rely upon the definitions given the word "regent" by both literary and law dictionaries to sustain their several contentions herein; one insisting that the word should receive at our hands its ordinary signification which it is contended would exclude the power which the board of agriculture has sought to exercise, and the other contending, even though it be given its ordinary meaning, the board would yet have the

power claimed for it. We do not find it necessary to pass on this question, however, for to our minds our statute and the language of the Constitution settles the issue if there be one. In section 42 of chapter 2, Mr. Murfee, in his work on Sheriffs, as quoted in the *Dahnke Case, supra,* says the name and office of sheriff implies the possession by that functionary of all the powers and the obligation to perform all the duties of a common-law sheriff, except so far as those powers and duties may have been modified by the state Constitution or constitutional statutes. Now, in the case at bar, if the Constitution in the first instance had provided for an agricultural and mechanical college, or had provided that the Legislature should establish such a college, and then that the board of agriculture should be the board of regents of such college without in any other way delimiting or defining its duties, we are inclined to think that they would have been just such as were legally inherent in such a board at common law or as generally understood by the people on the adoption of the constitution, just as duties of a sheriff, when his office was provided for by the Constitution, were such as appertained to it at common law with the exception as we have noted where the same were modified by the Constitution or constitutional statutes. In this case the specific duties of the board of regents were in no wise set out or enumerated by the Constitution; but they were defined by the statutes of the territory, which are and were constitutional, and which in our judgment were the duties referred to by the convention and the people when they provided that the board of agriculture should be such board of regents, and made mention of the "other" duties which we have noticed.

We have had our attention called to the case of *State ex rel. Haskell. v. Huston. Judge, et al.,* 21 Okla. 782, 97 Pac. 982; but this case to our minds is not in conflict, but in harmony, with the reasoning and conclusion reached in the case at bar. In that case there was involved the question of the authority and power of the Attorney General to file and prosecute a case in the name of the state in a district court without a request from the Governor or Legislature. Section 1 of article 6 of the Constitution (page

188, Snyder's Const.) provides that "the executive authority of the state shall be vested in an * * * Attorney General * * * who shall perform such duties as may be designated in this Constitution or prescribed by law." The Constitution did not undertake to designate his duties in this regard; but they were prescribed by law, and we held in that case, in consonance with our holding in the one at bar: That the Attorney General of the state had just such powers and authority to appear in a district court as he had under the statutes of the territory, which provides, as set set forth in the opinion, that the Attorney General should, "when requested by the Governor or either branch of the Legislature, appear and prosecute, or defend any action or proceedings, civil or criminal, in which the state should be interested or a party," and that "it was not the intention of the lawmakers that the Attorney General should have control of litigation in which the state was interested or a party, either civil or criminal, in the district courts of the state, except when requested by the Governor or either branch of the Legislature."

The judgment of the lower court is, accordingly, affirmed.

All the Justices concur.