** Part II of Part II ** Title 62 O.S. 7.3 [62-7.3] (1973), reads as follows: "A. At the end of each month, each state agency shall furnish to the Director of State Finance, in such form as he shall prescribe, a report showing the income, disbursements, and transfers for each agency clearing account and each agency's special account. Such report shall be accompanied by a reconciliation of agency and State Treasury records of income, disbursements and transfers. Income, disbursements and transfers shall be identified in accordance with code designations as provided in the State Budget Office accounting procedures. "B. The Director of State Finance may approve any modification in the code designations of income, disbursements and transfers that he finds expedient. "C. The State Treasurer shall not honor vouchers disbursing and transferring monies from agency clearing accounts or special accounts, when he has been notified by the Director of State Finance that an agency has not filed reports as provided in this section." Title 62 O.S. 7.4 [62-7.4] (1973), reads as follows: "All withdrawals of money from agency clearing accounts and agency special accounts shall be made on the voucher of the agency making such deposit and such voucher shall be payable at the State Treasury and when presented for payment shall be charged against the account designated, and shall, when redeemed by the State Treasurer, be delivered monthly to the state agency drawing said vouchers." Directing our attention to your first question, it is apparent that the circumstances you present where an institution under the Board of Regents incurs liabilities payable from education and general funds in excess of funds available should not occur if the above constitutional and statutory provisions are followed. For example, as to appropriated funds, Article X, Section 23, Oklahoma Constitution, expressly provides that an institution "shall not incur obligations in excess of the unencumbered balance of surplus cash on hand." Further, 62 O.S. 41.16 [62-41.16] (1971), provides that the Director of State Finance shall charge contracts, purchase orders and agreements against appropriation allotments and shall reject claims for which a prior encumbrance document has not been approved by the Director of State Finance. Appropriated money subject to fiscal year limitations allocated for the current fiscal year may not be used to pay any obligations from a previous fiscal year. In Opinion of the Attorney General 69-347, it was held that unpaid overtime wages accrued from prior fiscal years for employees of a college maintenance department could not be paid from current appropriated funds subject to fiscal year limitations. The opinion relied upon the case of Rountree v. Phelps, Okl., 197 P.2d 973, which states in the second paragraph of the syllabus by the Court: "Fiscal year as defined by Article X, Section 1, Const., is the accounting unit in state finance and the monies subject to appropriation consist of current revenue and accumulated surpluses and no appropriation of monies of one fiscal year may be devoted to the payment of obligations of any other fiscal year except such as are designated 'non-fiscal year obligations'." Our oral conversations with your staff reveal that in the particular circumstances giving rise to your inquiry, the "liabilities" in excess of available funds include liabilities incurred previous to the present fiscal year. As stated above, current appropriated moneys subject to fiscal year limitations may not be used to discharge such obligations. We assume, therefore, that the Board of Regents has sufficient available appropriated funds subject to fiscal year limitations to meet the current expenses payable therefrom and is, therefore, under the duty to continue to supervise, manage, and control the educational and general functions of the institution payable out of such appropriated funds within the constitutional and statutory requirements applicable thereto. We do not view the incurring of current expenses as in violation of the debt limitation of Article X, Section 23, since there are apparently sufficient appropriated funds to pay claims payable therefrom excluding claims which could not be legally paid out of such funds by reason of fiscal year limitations. With respect to moneys appropriated by the Legislature which are not made subject to fiscal year limitations, as well as funds in the institution's revolving fund, we would first point out that such funds are considered "treasury funds" as defined on page 17 of the PROCEDURES MANUAL, published by the Division of the Budget, dated January, 1973: "A treasury fund is one maintained by the State Treasurer from which disbursements can only be made on warrants issued by the State Auditor, against claims submitted to the State Budget Office for payment." As stated above, the Director of State Finance has the duty under 62 O.S. 41.16 [62-41.16] (1971), to reject claims for which a prior encumbrance document has not been approved by the Director of State Finance. In order for the circumstance of liabilities exceeding available revenue to exist with respect to such treasury funds, claims would have to have been approved by the Director of State Finance in excess of unencumbered funds on hand. We do not understand that to be the case. Rather, from our oral discussions with your staff, we understand that the "liabilities" in excess of available revenues include claims for which the required prior approval was not obtained. Invoices or claims not having such prior approval must be rejected by the Director of State Finance and cannot be considered valid obligations. We assume, therefore, that the Board of Regents has sufficient available revolving fund moneys and other treasury funds sufficient to meet the valid liabilities payable therefrom. Educational and general functions of the institution supported by such funds must, therefore, be continued within the constitutional and statutory requirements applicable thereto. As to your second question, under 62 O.S. 7.2 [62-7.2] (1973), quoted above, auxiliary enterprise funds such as income from intercollegiate athletics, food service, and housing are deposited in the institution's special agency account. While Section 7.2 requires that moneys disbursed from such account be "to accomplish the purpose for which the moneys were intended", there is no debt limitation provision as is contained in the revolving fund statutes prohibiting obligations from being incurred in excess of the unencumbered balance of cash on hand. Auxiliary enterprise funds are not subject to fiscal year limitations. They are not treasury funds which may be expended only upon the Budget Office's prior approval and encumbrance and issuance of a warrant by the State Auditor. Under 62 O.S. 7.4 [62-7.4] (1973), the institution itself may draw vouchers payable from their agency special account in the State Treasury and pay claims arising out of their auxiliary enterprises. Since auxiliary enterprise funds are not subject to fiscal year limitations, claims for previous fiscal years could legally be paid from current revenues so long as the purpose requirement of Section 7.2 is met. That is, for example, if money is collected for food services purposes it must be expended for such purposes. Likewise, since auxiliary enterprise funds are not subject to prior approval and encumbrance by the Director of State Finance, no claims would be invalid under the reasoning given in response to your first question in relation to revolving funds. In determining whether there may exist valid liabilities in excess of available revenues with respect to auxiliary enterprise funds it is necessary to consider the debt limitation provision of Article X, Section 23. In State v. Grand River Dam Authority, Okl.,154 P.2d 946, it was held that the debt limitations of Article X, Section 23, were not applicable to the Grand River Dam Authority where it proposed to issue and sell revenue bonds. The Court stated as follows: "We hold it to be manifest that the word 'revenues' as used has reference to revenue provided under the taxing power of the State, and the word 'obligations' has reference to an indebtedness for the payment of which resort, previous to such amendment, might properly be had to the taxing power of the state. And, hence, it follows that agencies such as defendant Authority that do not operate in whole or in part on state revenue as defined and whose obligations cannot become debts of the State are not within the purview of said provisions of the amendment inhibiting creation of indebtedness in excess of current revenue." The holding in State v. Grand River Dam Authority was followed in the cases of Re Application of Board of Regents of University of Oklahoma, Okl., 161 P.2d 447, and Application of Board of Regents for Oklahoma Agricultural and Mechanical Colleges, Okl., 167 P.2d 883. In the latter cases, the Court upheld certain proposed dormitory bond issues on the basis that the indebtedness could not involve the taxing powers of the State The basis of these decisions recognizing an exception to the debt limitation requirement of Article X, Section 23, has been described in previous decisions as the "special fund doctrine". In Baker v. Carter, Okl., 25 P.2d 747, the plaintiff sought to enjoin the State Auditor and the State Board of Agriculture from issuing and selling bonds to erect dormitories on the campus of the Oklahoma Agricultural and Mechanical College at Stillwater. In holding that such bonds would not constitute a debt within the meaning of Article X, Section 23, the Court reasoned as follows: "The Oklahoma Agricultural and Mechanical College is a public corporation, a separate legal entity, whose government and management is vested in a board of regents, the state board of agriculture. Section 7244 O.S. 1931 [44-1931]; Trapp, State Auditor v. Cook Construction Co.,24 Okl. 850, 105 P. 667. It has the power and authority to do everything necessary and convenient where it is not prohibited, either expressly or impliedly by law, to accomplish the objects for which the institution was founded: Connell v. Gray, 33 Okl. 591, 127 P. 417,42 L.R.A. (N.S.) 336, Ann. Cas. 1914B, 399; Rheam v. Board of Regents of University of Oklahoma, 161 Okl. 268,18 P.(2d) 535; and to do all things necessary to make the college effective as an educational institution. Section 7246 O.S. 1931 [46-1931]. "There is no constitutional or statutory inhibition against the power or authority of the board of regents in issuing the bonds in question for the construction and equipment of the dormitory payable out of a special fund provided, to wit, rents and fees to be received from the students using the dormitory while in attendance at the University." The Court relied upon the following language of the case of Valparaiso v. Gardner,97 Ind. 1, 49 Am. Rep. 416, as follows: "It has therefore been quite uniformly held that the word 'debt', as used in such constitutional provisions, does not include any pecuniary obligation imposed by contract which, within the lawful and reasonable contemplation of the parties thereto, is to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation. In re State Warrants, 6 S.D. 518, 62 N.W. 101, 55 Am. St. Rep. 852; Appeal of the City of Erie, 91 Pa. 398; McNeal v. City of Waco, 89 Tex. 83, 33 S.W. 322; Swanson v. Ottumwa,118 Iowa 161,91 N.W. 1048, 59 L.R.A. 620. What was the object intended to be accomplished by those laws which provide for the levying of taxes to speedily pay a 'debt' when contracted and provide for the limitation of the total indebtedness of a state or of a political division thereof? "These provisions were adopted in order to counteract the tendency of the living to obtain conveniences at the expense of unborn generations; in other words, to prevent the casting upon the shoulders of tomorrow the burdens of today. But only those laws should be held to be under the ban which have the purpose and effect of accomplishing that which these provisions are intended to prevent. No law can properly come under such ban which does not intend the actual incurring of a liability and the future levying of taxes to meet the same. If the law contemplates that the liability shall be met and cared for in a manner other than by general taxation, the mere possibility that a contingency may arise under which such liability or a part thereof shall need to be met through a general tax, at least unless it is apparent that such possibility is in fact a probability, is not enough to invalidate the law." (Emphasis added) Funds in the institution's special agency account collected and expended for its auxiliary enterprises are not subsidized by legislative appropriations or other funds arising out of the taxing power of the State. The institution operates such functions on a self-sustaining basis. Those entrusted with such funds are not authorized to obligate the State of Oklahoma in carrying on such auxiliary enterprises. Therefore, under the above authorities, the debt limitation provisions of Article X, Section 23, are not applicable to auxiliary enterprises. It should be emphasized, that the Board of Regents under 71 O.S. 3412 [71-3412] (1971), is granted "every power necessary or convenient to make institutions under its jurisdiction effective for the purposes for which they were created and are maintained and operated." In Rheam v. Board of Regents, Okl., 18 P.2d 535, quoted in the case of Baker v. Carter, supra, the Court construed statutory language applicable to the Board of Regents of the University of Oklahoma quite similar to that of Section 71 O.S. 3412 [71-3412] as follows: "Under that rule we are not required to look for grants of power to the Board of Regents of the University, but for limitations on its power. . ." Thus, Board of Regents subject to such statutory language providing for "necessary or convenient" powers have broader power than is ordinarily true of state officials who may exercise only such powers as have been delegated to them by express constitutional and statutory provisions, or as may properly be implied from the nature of the particular duties imposed on them. See 81 C.J.S. States, 57. There being no limitation on the power of the Board of Regents to incur obligations in excess of cash on hand with respect to auxiliary funds, the Board of Regents has the legal responsibility to continue to incur obligations as necessary to provide food and housing for students and maintain its other auxiliary enterprises necessary to make the institution effective as an educational institution. However, the Board of Regents and administration of the institution have a responsibility to conduct the business affairs of the institution in a reasonable and prudent manner. Moreover, there would not be a breach of any legal duty imposed upon the Board of Regents in approving claims for current expenses rather than past due obligations. In 37 C.J.S. Fraudulent Conveyances, 235, it is stated: "In the absence of fraud a debtor, although insolvent or in failing circumstances, may prefer one or more of his creditors by payment in money or other property or by giving security for the debt, and that preference thus given will be valid, notwithstanding the claims of other creditors will thereby be delayed or defeated. "Such a preference, although it may, in paying one creditor, exhaust or so reduce the assets of the debtor as to leave other creditors unpaid and without the means of collecting their claims, does not of itself 'hinder, delay or defraud creditors'. . .nor does it deprive creditors of any legal right since they have no right to a priority of payment." (Emphasis added) The right of a debtor to make such a preference among creditors is recognized in 24 O.S. 11 [24-11] (1971), which reads as follows: "Any person in this State indebted to other persons shall have the right to prefer one or more of such creditors in good faith to secure a valid debt, which preference may be manifested by payment, by mortgages, either real or chattel, or by the transfer of personal property or real estate, and if received by the creditor in good faith, such conveyance or mortgage shall be valid in the hands of the mortgagee and constitute a preference to the extent thereof, subject to the laws relating to the filing and recording of mortgages." (Emphasis added) Further, such right of a debtor has been held by the Oklahoma Supreme Court to extend to preferring an ordinary creditor over a judgment creditor. Riedell v. Lydick, Okl., 55 P.2d 465. As to the question of whether the State is a person having such preference right within the meaning of 24 O.S. 11 [24-11] (1971), it would seem that the State should be included within the meaning of such term. In United States v. Coumantaros, 165 F. Supp. 695 (D.Md. 1958), the question was whether the United States was a person within the meaning of a Maryland statute allowing every person and every body corporate to institute non-resident attachment proceedings. The third syllabus by the Court states: "The general rule of construction excluding the federal and state governments and their agencies from the purview of a statute expressly applicable to a 'person' or 'corporation' has no application where no impairment of sovereign powers will result, where immunity has been waived, or where the government is given, rather than deprived of, powers." As to your third question, the above reasoning in response to your first question compels the conclusion that claims incurred in previous fiscal years payable from legislative appropriations may not be approved for payment from current legislative appropriations subject to fiscal year limitations. Claims from previous fiscal years payable from appropriated moneys not subject to fiscal year limitations and revolving funds, otherwise valid, may be approved during the present fiscal year. However, no claims may be approved which are invalid by reason of the failure to obtain prior approval and encumbrance by the Director of State Finance. As to your fourth question, our response to your second question compels the conclusion that the Board of Regents may approve claims for payment during the present fiscal year although incurred in previous fiscal years with respect to auxiliary enterprise funds so long as the funds are expended for the same purposes as collected. As to your fifth question, our response to your first two questions compels the conclusion that the Board of Regents is obligated to continue to operate and maintain such institution during the current fiscal year. The fact that actions have been taken in the past to seriously impair the financial condition of the institution does not provide a basis for taking the drastic action, without statutory authorization, of ceasing operations when current funds are available to continue to operate. As to your sixth question, our response to your second and fourth questions compel that such question be answered affirmatively. As to your seventh question, our discussion above in response to your first and second questions as to the nature of revolving funds and special agency accounts, formerly known as depository accounts, reflects that revolving funds are treasury accounts which may be expended only upon warrants issued by the State Auditor and are subject to prior approval and encumbrance by the Director of State Finance. Special agency accounts are not subject to such procedure since the institution directly draws vouchers on the State Treasury. There is no statutory debt limitation provision applicable to special agency accounts as is true of institutional revolving funds. Your eighth and ninth questions have been previously answered by our response to your first and second questions. As to your tenth question, we would first point out the general rule as stated in Dickey v. Cordell, Okl., 55 P.2d 126: "In the absence of malice, oppression in office, or willful misconduct, public officers cannot ordinarily be held liable for mistaken exercise of discretion or error in judgment, in the performance of official duties." However, it would be appropriate to consult private counsel for advice on any particular factual situation involving a question of possible personal liability. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Where an institution under the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges purports to incur liabilities payable from educational and general funds in excess of funds available, the Board of Regents has the legal responsibility to continue to operate such institution where the current appropriated moneys subject to fiscal year limitations are in excess of liabilities payable therefrom after excluding claims from previous fiscal years and where any non-fiscal appropriated funds or revolving fund moneys are in excess of valid liabilities payable therefrom after excluding claims which are invalid by reason of the failure to comply with the requirements of prior approval and encumbrance, or otherwise. Where such an institution incurs liabilities payable from auxiliary enterprise funds, in excess of cash on hand, the Board of Regents has the legal responsibility to continue to incur obligations as necessary to provide food and housing for students and maintain its other auxiliary enterprises necessary to make the institution effective as an educational institution. However, the Board of and prudent manner. The Board of Regents may not approve claims incurred in previous fiscal years payable out of current appropriated funds subject to fiscal year limitations. The Board may approve claims from previous fiscal years payable out of appropriated funds not subject to fiscal year limitations or from the institution's revolving fund, otherwise valid, so long as the requirement is met of obtaining prior approval and encumbrance by the Director of State Finance and other applicable laws. Claims incurred in previous fiscal years payable from auxiliary enterprise funds are not subject to fiscal year limitations and they may be paid from current funds so long as the funds are expended for the same purpose as collected. A revolving fund differs from a special agency account in that moneys from a revolving fund may be expended only upon warrants issued by the State Auditor and such expenditures are subject to prior approval and encumbrance by the Director of State Finance. Special agency accounts are not subject to such procedure since the institution directly draws vouchers on the State Treasury. There is no statutory debt limitation provision applicable to special agency accounts as is true of revolving fund accounts. However, obligations must be incurred in a reasonable manner. It is a general rule that in the absence of malice, oppression in office, or willful misconduct, public officers cannot ordinarily be held liable for mistaken exercise of discretion or error in judgment in the performance of official duties. However, it is appropriate to consult private counsel for advice on any particular factual situation involving a question of possible personal liability. (Joe C. Lockhart, Nathan J. Gigger)