MORRIS *et al. v.* CITY OF COLUMBUS (three cases).

The General Assembly may, in the exercise of the police power, confer upon the municipal corporations of this State authority to make and enforce ordinances requiring all persons who may be within the limits of such corporations to submit to vaccination,. whenever an epidemic of smallpox is existing, or may be reasonably apprehended.

Argued February 7, — Decided February 28, 1898.

Certiorari. Before Judge Butt. Muscogee superior court. November term, 1897.

*C. J. Thornton* and *Cameron & Hargett*, for plaintiffs in error. *Francis D. Peabody*, contra.

COBB, J. In 1890 the General Assembly conferred upon the mayor and aldermen of the City of Columbus authority to "de-clare by resolution that vaccination shall be compulsory upon all persons living in the county of Muscogee, or any part there-of," the resolution to provide "the time within which all per-sons living in said county, or any part thereof, shall be vacci-nated"; the act further providing that "any person failing to be vaccinated within the time required in said resolution shall, upon conviction," be punished as therein prescribed. Acts 1890–91, p. 508. On August 7, 1897, the city council passed a resolution for compulsory vaccination of each and every per-son resident of that city, over the age of two years, and of all persons non-resident who were employed in the city, excepting such as would produce physicians' certificates that they had been successfully vaccinated since January 1, 1897, or that such person was an immune, or was in such state of health that vaccination would be dangerous; provided that any per-son should have the right to be vaccinated by the physician of his choice. Two days later the city council passed a further resolution, that all persons residing within a radius of three miles from the city should be vaccinated within ten days from its passage, except such persons as might produce a certificate of a reputable physician that vaccination was not necessary or would be dangerous in a given case. Each of these resolutions provided a penalty for its violation. On September 13, 1897, a further resolution was passed, providing for a house-to-house vaccination, with penalty for failing or refusing to be vacci-nated. Morris, Newsom and Yarbrough were arraigned be-fore the recorder's court for a violation of these resolutions. Upon conviction they each applied to the superior court for a writ of certiorari, and the refusal of that court to sustain the certiorari is the error assigned here. From the record it ap-pears that plaintiff in error Morris resided outside of the city

limits, in Muscogee county, but was an employee of a factory within the city limits and was at the factory at the time he refused to be vaccinated or to produce a certificate of a physician showing that he was within any of the exceptions enumerated in the resolution. Newsom and Yarbrough were residents of the city. Morris excepted to the decision of the recorder, on the ground that that court had no jurisdiction of him; and because the resolution, the violation of which was charged, was illegal and unconstitutional. Newsom and Yarbrough excepted on the grounds that the recorder's court refused to grant them time to procure counsel and prepare their defense; that the evidence was not sufficient to authorize the judgment; that no necessity appeared for the enforcement of the resolution; and that the same is unconstitutional and void. It appears from the record, that there was no smallpox in the city when the plaintiffs in error refused to be vaccinated or to furnish a certificate, but there was smallpox in the city when the two resolutions were passed by the council; that the disease is one which grows more prevalent in winter; and that there was smallpox at the date of the trials in the city of Birmingham, Alabama.

All of the plaintiffs in error attack the constitutionality of the act of the General Assembly conferring authority upon the city council of Columbus to require vaccination in certain cases. Before discussing this question, we will dispose of the other questions raised by the petitions for certiorari. Plaintiff in error Morris contends that the court had no jurisdiction of him, because he was a non-resident of the city, although he lived but three hundred feet from the city limits and in Muscogee county. The General Assembly by an act approved November 15, 1895, amendatory of the act of 1890, creating a new charter for the City of Columbus (Acts 1895, p. 158), gave jurisdiction to the mayor and aldermen of Columbus over all persons living within a radius one mile and a half from the city limits, so far as requiring vaccination was concerned; and if the legislature had power to pass this act (and it is not contended that it did not), then it follows that the recorder's court had jurisdiction to try and punish any person within the pre-

scribed limits for a violation of the city's ordinance. It is not necessary, however, to decide in this case whether or not the General Assembly could give the municipal authorities jurisdiction over persons who live outside the city limits and do not come into the city; or whether or not the authorities have transcended their power in passing an ordinance designed to affect persons living further from the city than one and a half miles, as the question raised by plaintiff in error Morris is whether or not the city authorities have jurisdiction over a person who, while he has his legal residence outside of the city limits, is actually in the city during the day while engaged in his employment. As we have seen, this power was expressly conferred upon the municipal authorities by the legislature, and it is certain that the legislature could give the city jurisdiction over such a person. If this were not true, vaccination, if efficacious, would afford scant protection to the inhabitants, when persons living outside of the city and who had been exposed to the contagion might come into the city and scatter it broadcast among them before they had been inoculated and thus rendered immune. But even without express legislative permission, it is the current of authority that municipal ordinances have the same effect upon persons who come within the limits of a city, as they have upon regular inhabitants. 1 Dill. Mun. Cor. § 355; Bott v. Pratt, 33 Minn. 323; Village of Buffalo v. Webster, 10 Wend. 100; Wilmington v. Roby, 8 Ired. 250; City Council of Charleston v. Pepper, 1 Rich. 364; Kennedy v. Sowden, 1 McMul. 323; Knoxville v. King, 7 Lea, 441; Folmar v. Curtis, 86 Ala. 354.

The next point raised by the petitions for certiorari is, that there was no necessity for the enforcement of the ordinance. The right to enforce vaccination (assuming for the present that its enforcement is constitutional) is derived from necessity; and although the authority conferred upon the municipal corporation of Columbus is very broad, still we can not assume that the legislature intended that they should exercise this authority save in cases of necessity. Did the necessity for the enforcement of the ordinance against the plaintiffs in error exist? We think there can be no question, under the facts appearing in

the record, that the municipal authorities had reasonable grounds for apprehending that an epidemic of smallpox was imminent. While the disease did not exist in the community at the time of the trial, it was prevalent in Birmingham, an adjacent city; it was present in Columbus when the resolution was adopted; and winter was approaching, at which season the disease is more highly contagious than at any other time. Taking these facts into consideration, we think the authorities were warranted in enforcing the ordinance, unless it invaded some constitutional right of the plaintiffs in error. And this brings us to a discussion of the main question in the case. Before doing so, however, it may be well to remark that a number of objections that are usually urged against compulsory vaccination can not be considered under an exception to the constitutionality of the law. Other than as above indicated, no attack has been made on the ordinance itself. The municipal authorities have carried into execution the power conferred upon them by the General Assembly. They have, it would seem, in no way transcended that power. The ordinance is aimed only at those who have not been vaccinated within a certain time, who are not immune, or who have not furnished a certificate from some physician that the injection of the virus into their system would be injurious. It is even more liberal than that; it allows to every person the privilege of being inoculated by the physician of his choice. There can be no question that this is a reasonable exercise of the power conferred upon the city authorities by the legislature. With the wisdom or policy of vaccination the courts have nothing to do. We do not propose to enter into a discussion as to whether or not it is a preventive of smallpox. That question is not proper subject-matter for review by the courts. The legislature has seen fit to adopt the opinion of those scientists who insist that it is efficacious, and this is conclusive upon us. Our only province is to see that none of the rights guaranteed to the plaintiffs in error by the fundamental law are infringed. "What is for the public good, and what are public purposes, and what does properly constitute a public burden, are questions which the legislature must decide upon its own judgment, and in respect to which it

is vested with a large discretion which can not be controlled by
the courts, except, perhaps, where its action is clearly evasive,
and where, under pretense of lawful authority, it has assumed
to exercise one that is unlawful." Cooley's Const. Lim. 155.
See also Powell *v.* Pa., 127 U. S. 678. No law which infringes
any of the natural rights of man can long be enforced. Under
our system of government the remedy of the people, in that
class of cases where the courts are not authorized to interfere,
is in the ballot-box. Any law which violates reason, and is
contrary to the popular conception of right and justice will not
remain in operation for any length of time, but courts have no
authority to declare it void merely because it does not measure
up to their ideas of abstract justice. The motive which doubt-
less actuated the legislature in the passage of the act now under
consideration was that vaccination was for the public good.
In this the General Assembly is sustained by the opinion of a
great majority of the men of medical science both in this
country and in Europe.

The General Assembly conferred this authority upon the
City of Columbus in the exercise of its police power, by which,
says Tiedeman, "State, persons, and property are subjected to
all kinds of restraints and burdens, in order to secure the gen-
eral comfort, health, and prosperity of the State." The Supreme
Court of Illinois has said of this power that it is "coextensive
with self-protection, and is not inaptly termed 'the law of over-
ruling necessity.' It is that inherent power in the State, which
enables it to prohibit all things hurtful to the comfort and wel-
fare of society." Lakeview *v.* Rose Hill Cemetery, 70 Ill. 192.
The Court of Appeals of New York says: "The police power
extends to the protection of persons and property within the
State. In order to secure that protection they may be sub-
jected to restraints and burdens by legislative acts. If the act
is a valid and reasonable exercise of the police power of the
State, then it must be submitted to, as a measure designed for
the protection of the public and to secure it against some dan-
ger, real or anticipated, from a state of things which modifica-
tions in our social or commercial life have brought about.
The natural right to life, liberty, and the pursuit of happiness

is not an absolute right. It must yield whenever the concession is demanded by the welfare, health, or prosperity of the State. The individual must sacrifice his particular interest or desires, if the sacrifice is a necessary one, in order that organized society as a whole shall be benefited." People *v.* Warden of City Prison, 39 N. E. Rep. 686. We can not see what there is in the present case to differentiate it in principle from a number of other cases in which private rights have been subordinated to the health and comfort of the public. Danger to public health has always been regarded as a sufficient ground for the exercise of police power in restraint of a person's liberty. The right of a State to enforce quarantine laws in the interest of public health, or to abate nuisances which are of a character likely to injure the health of a community, has rarely ever been questioned; and the power of the general government to prevent the landing in this country of immigrant foreigners infected with contagious diseases has long been established. See Harrison *v.* Baltimore, 1 Gill, 264; Parker & Wor. Public H. & S. § 26, p. 35; Prentice, Police Power, pp. 105–106. It is not our purpose, nor would it be profitable here, to enter into any extended discussion as to what things are included in the general police power of the State. In general, it may be said, in the language of the Supreme Court of the United States, that "it is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance." Lawton *v.* Steele, 152 U. S. 133. Tiedeman in his work on Limitations of Police Power (p. 32) recognizes the right of a State to pass laws requiring vaccination. He says: "It seems that medical and surgical treatment can be prescribed, against the consent of the individual, as a preventive of contagious and infectious diseases. Thus in England, and probably in some of the United States, vaccination has been made compulsory." And we may add just here that at the present time a great majority of the United States have such laws. In Parker & Worthington on Public Health & Safety, § 123, the doctrine is stated broadly as follows: "It is sometimes provided by law

that persons who may have been exposed to contagion, or who come from places believed to be infected, and particularly children attending the public schools, shall submit to vaccination, under direction of the health authorities. This requirement is a constitutional exercise of the police power of the State, which can be sustained as a precautionary measure in the interest of the public health." The cases cited support the text in principle. In the case of Hazen v. Strong, 2 Vt. 427, the court held that the municipal authorities of a certain town in Vermont had authority, under a general legislative power "to take the most prudent measures" to prevent the spread of smallpox, to levy and collect a tax for the purpose of defraying the expenses of having the inhabitants inoculated with the "kine-pox." It was conceded in that case by both sides that the town would have authority to levy and collect the tax in question under certain circumstances, that is, where the danger of an epidemic of smallpox was imminent. The analogy between this case and cases like the present is apparent. ' In Prentice on Police Power, pp. 133–4, there is a discussion of a number of laws providing for compulsory vaccination, and also a few cases in which the manner of the exercise of the power was brought in question. After discussing these at length, the author concludes in these words: "The presumption that under the law and ordinances cited vaccination was a lawful act, would appear conclusive from these cases, and the only questions which would remain are those of negligence and willful wrongs." So far as we are aware no court has ever been called upon to pass on this exact question, but there are a few decisions in which the subject of vaccination is discussed, and these show the trend of the judicial mind on the subject. In the Matter of Smith (40 N. E. Rep. 497) was a case in which Smith and another were detained in quarantine under a resolution of the municipal authorities of the City of Brooklyn, declaring that "whenever any person in said city shall refuse to be vaccinated, such person shall immediately be quarantined, and detained in quarantine until he consents to such vaccination." The Court of Appeals of New York reversed the Supreme Court, General Term, for refusing to order the release of the

persons detained. But the decision was put upon the ground that the power conferred upon the local legislature of Brooklyn was not sufficiently broad to cover the case of the appellants. In discussing the case, Gray, J., says: "I think no one will dispute the right of the legislature to enact such measures as will protect all persons from the impending calamity of a pestilence, and to vest in local authorities such comprehensive powers as will enable them to act competently and effectively. . . The question here is, not whether the legislature had the power to enact the provisions of section 24 of the health law, but whether the respondent has shown that a state of facts existed warranting the exercise of the extraordinary authority conferred upon him." In Potts *v.* Breen, 47 N. E. Rep. 81, it was held that a school board could not make vaccination a condition precedent to admission to the public schools, when smallpox did not exist in the community, and when there was no reason for apprehending an epidemic of that disease, in the absence of express authority from the legislature. An examination of the opinion of the court shows, that while the question was not presented, they were clearly of the opinion that compulsory vaccination would be allowable in certain cases when express legislative authority was given. The court uses this language: "It is a matter of common knowledge that the number of those who seriously object to vaccination is by no means small, and they can not, *except when necessary for the public health and in conformity to law* [italics ours], be deprived of their right to protect themselves and those under their control from an invasion of their liberties by a practically compulsory inoculation of their bodies with a virus of any description, however meritorious it might be." There are several cases, holding that acts of the legislature authorizing school boards to require vaccination as a condition precedent to admission to the public schools is not an invasion of any constitutional right of the pupil. Duffield *v.* Williamsport, 162 Pa. 476, 25 L. R. A. 152; Bissell *v.* Davison, 32 Atl. (Conn.) 348; Abeel *v.* Clark, 24 Pac. (Cal.) 383; In re Rebenack, 62 Mo. App. 8; In re Walters, 32 N. Y. S. 322. Pupils of schools constitute a general class of persons. If the legislature can

authorize the imposition of this condition upon one class, why not upon another? If it can say that the penalty for refusing to be vaccinated must be a denial of the pupil's right or privilege to attend school, why can it not say to another general class, the penalty for your refusal to submit to vaccination shall be a fine or imprisonment? If the act can be upheld in the one case as constitutional, why not in the other? True in the school cases the pupils may remain out of school; but unless vaccination is itself lawful, what right has a school board to deny admission to the schools until this unlawful regulation is complied with? The school boards have no right to pass such a regulation unless the power is specifically conferred upon them by the legislature; and ought a condition precedent to compliance with an unconstitutional law be upheld? Can the cases be justified on any other theory than that the law itself is not unconstitutional? True the child may avoid the consequences of the resolution by not entering school; and so the citizen may avoid the consequences of a municipal regulation by putting himself beyond the jurisdiction of the municipality. Indeed, this is a very effectual way of avoiding the consequences incident to a failure to comply with any law. Suppose the courts were to declare the act now under consideration repugnant to the constitution, would it be contended for a moment that the legislature could confer the same authority on a school board? Is there any good reason in law for the discrimination? There can be no legal reason for refusing to allow a child to invoke a law to secure him in his right, or privilege, whichever it may be termed, to attend a public school, which a citizen might rely on to secure him a residence in a given place. It seems to us, therefore, to be a necessary conclusion from the cases cited supra, holding a regulation requiring vaccination of pupils as a condition precedent to admission in the public schools reasonable and constitutional, that the act now under consideration is a valid exercise of the police power. Under this view the decision in the present case is supported by direct authority. But however this may be, we hold that the legislature has power to pass an act compelling vaccination, and that it may delegate this authority to a municipal

corporation. But while this is true, municipal corporations must have express authority from the legislature, as no such power will ever arise by implication. State *v.* Burdge, 70 N. W. Rep. 347; Potts *v.* Breen, supra. In no proper sense can the act of the General Assembly attacked in this case be said to deprive the plaintiffs in error of any right without due process of law, or to deny to them the equal protection of the laws. It follows, therefore, that the superior court did not err in refusing to sustain the petitions for certiorari.

*Judgment affirmed. All the Justices concurring.*