STATE v. W. E. HAY.

(Decided March 20, 1900.)

*Compulsory Vaccination—Violation of Town Ordinance of Burlington—Act of 1893, Chapter 214, Section 23— Salus Populi Suprema Lex—The Code, Section 3820.*

1. The public safety is the highest law—it is the foundation principle and urgent cause of all civil government.

3. The Act of 1893, chap. 214, is a carefully drawn statute for the preservation of the public health, and its sec. 23 empowering the authorities of county and town to make regulations and provisions for the vaccination of the inhabitants, and to enforce them by penalties, is a valid exercise of governmental police power for the public welfare, health and safety.

4. The highest medical authorities, confirmed by long experience of mankind, attest the efficacy of vaccination as a preventive or alleviative of a most dreadful disease, small-pox.

5. The general law embraces all, leaving it optional to no one's private judgment whether to render compliance or not. If there are exceptional cases, where owing to the peculiar state of the health or system, vaccination would be dangerous, that would be matter of defense, the burden of which would be on the defendant, and a fact to be found by the jury.

CRIMINAL PROSECUTION under sec. 3820, of The Code, for violation of an ordinance of the town of Burlington, tried on appeal from the Mayor's Court, before *Brown, J.,* at November Term, 1899, of the Superior Court of ALAMANCE County. The ordinance related to vaccination, and is as follows:

North Carolina, Alamance County.

"That all citizens of Burlington not successfully vaccinated within the last three years shall be vaccinated between this date (March 13, 1899), and Friday night, March 17, instant, 9 o'clock p. m., and all persons refusing to be vaccinated shall

be fined $10 for every day they refuse, after being called upon by the doctors appointed, or imprisoned thirty days."

The defendant refused to be vaccinated for the reason that he had been advised and believed that it would be dangerous for him by reason of his physical condition.

In order to test the validity of the ordinance and for that purpose to allow the State to appeal, the case was decided *pro forma* by special verdict in favor of defendant, and from the judgment rendered the Solicitor appealed.

*Attorney-General,* for the State.
Defendant not represented.

CLARK, J.    Chapter 214, of the Laws of 1893, is a well-considered and carefully-drawn statute for the preservation of the public health.    Section 23 thereof, which is specifically in regard to vaccination, contains among other provisions this clause:    "The authorities of any city or town, or the Board of County Commissioners of any county, may make such regulations and provisions for the vaccination of its inhabitants under the direction of the local or County Board of Health or a committee chosen for the purpose, and impose such penalties as they deem necessary to protect the public health."    There is no provision of the Constitution which forbids the Legislature so to enact, and it is indeed an exercise of that governmental police power to legislate for the public welfare which is inherent in the General Assembly, except when restrained by some express constitutional provision.

*Salus populi suprema lex,* "the public welfare is the highest law," is the foundation principle of all civil government. It is the urgent cause why any government is established, for, as Burke says:    "All government is a necessary evil."    It is, however, a much lesser evil than the intolerable state of

things which would exist, if there were no government to bridle the absolute right of every man to do "that which seems right in his own eyes," like the Israelites in the days of Micah. The above maxim, quoted from Lord Bacon, is placed appropriately first by Broom in his treatise on "Legal Maxims," with this just observation: "There is an implied assent on the part of every member of society that his own individual welfare shall, in cases of necessity, yield to that of the community; and that his property, liberty and life shall, under certain circumstances, be placed in jeopardy or even sacrificed for the public good." This observation, which is almost a literal translation from Grotius, he fortifies by quotations from Montesquieu, Lord Hale, and many judicial opinions from both sides of the Atlantic. But it needs none, for it is every day common sense that if a people can draft or conscript its citizens to defend its borders from invasion, it can protect itself from the deadly pestilence that walketh by noon-day, by such measures as medical science has found most efficacious for that purpose. We know, as an historical fact, that prior to the discovery, 101 years ago, of vaccination, by Edward Jenner, small-pox often destroyed a third or more of the population of a country which it attacked, and so futile was every precaution, and the most careful seclusion, that the greatest sovereigns fell victims to this loathsome disease, which Macaulay has styled "the most terrible of all ministers of death." If this was so in days of imperfect communication, the present rapid means of intercourse between most distant points would so spread the disease as to quickly paralyze commerce, and all public business, if government could not at once stamp it out by compelling all alike, for the public good as much as for their own, to submit to vaccination. Statistics taken by governmental authority show that while 400 out of every 1,000 unvaccinated persons, exposed to the

contagion, are attacked by it, less than two in 1,000 take the disease when protected by vaccination within a reasonable period.    There are those, notwithstanding these well-ascertained facts, who deny the efficacy of vaccination, as there are always some who will deny any other result of human experience, however well established, but the Legislature, acting in their best judgment for the public welfare upon the information before them, has deemed. vaccination necessary for public protection, and their decision, being within the scope of their functions, must stand until repealed by the same power.

The power of the Legislature to authorize county and municipal authorities to require compulsory vaccination has been exercised by nearly every State, and has been recently sustained by the highest courts of two of our sister States. *Morris v. Columbus,* 102 Ga., 792; *Blue v. Beach,* (Supreme Court Indiana, February 1, 1900), 56 N. E. Rep., 89, and there are no decisions to the contrary.    In reply to the argument that such exercise of power by the Legislature may in some cases infringe upon individual rights, *Cobb, J.,* in the Georgia case just cited, well says:    "No law which infringes upon the natural rights of man can be long enforced. Under our system of government, the remedy of the people, in that class of cases where the courts are not authorized to interfere, is at the ballot box.    Any law which violates reason, and is contrary to the popular conception of right and justice, will not remain in operation for any length of time, but courts have no authority to declare it void merely because it does not measure up to their ideas of abstract justice.    The motive which doubtless actuated the Legislature in the passage of the act now under consideration was that vaccination was for the public good.    In this the General Assembly is sustained

by the opinion of a great majority of the men of medical science, both in this country and in Europe."

But even if we were of opinion with the small number of medical men who contend that vaccination is dangerous to health, and not a preventive of the disease, the Court is not a paternal despotism, gifted with infallible wisdom, whose function is to correct the errors and mistakes of the Legislature. *Brodnax v. Groom,* 64 N. C., at p. 250. Our people are self-governing, and themselves correct the mistakes of their representatives. The function of the courts is to construe and apply the laws, and they can hold a statute nugatory only when plainly and clearly violative of some provision of the organic law which has restrained the legislative power. *Sutton v. Phillips,* 116 N. C., 502; *White v. Murray,* at this term.

Nor does sec. 23, of the act, require that the Board of Aldermen shall pass such ordinance in conjunction with the Board of Health (as defendant contends). It merely provides that the execution of the ordinance, i. e., the vaccination, shall be under the direction of the local Board of Health or a committee appointed by the Aldermen.

While the Legislature has power to authorize municipal bodies to provide compulsory vaccination, and the defendant did not comply with the ordinance enacted by the town of Burlington, in pursuance of such authority, though afforded opportunity to do so, it is true that there may be some conditions of a person's health when it would be unsafe to submit to vaccination, and which, therefore, would be a sufficient excuse for non-compliance, but it does not vitiate the ordinance that such exception is not provided for and specified therein. It is not a defense that a person *bona fide* believes that it will be dangerous for him to be vaccinated or believes that he is already sufficiently protected by former vaccination; nor

would the opinion of his personal physician on either point be conclusive (though it would naturally have weight with the jury), for there may be evidence or circumstances tending to the contrary. Indeed, as to a former vaccination being sufficient protection, the opinion of the official physician supervising the vaccination should be presumptively correct. That which would relieve from a compliance with the ordinance is a matter of defense, the burden of which is upon the defendant, and is a fact to be found by the jury. The special verdict is ambiguous and defective in this particular, and is set aside. Let there be a

New trial.

DOUGLAS, J., concurring. While I concur in the judgment of the Court, I fear that there are some expressions in the opinion that may be misconstrued.

What I understand the Court to mean is, that while it is in the province of the Legislature to provide for the public health by all reasonable means, and incidentally to confer that power upon municipal corporations, yet whenever the exercise of that power is in derogation of natural right, it must be exercised in a reasonable manner. Compulsory vaccination is not an unreasonable requirement, as experience has shown that it is in times of epidemic necessary for the protection of the community and equally so of the individual. It is ordinarily less harsh than quarantine or isolation, and in the great majority of cases has no injurious effect beyond some slight temporary illness. But there may be cases where vaccination, owing to certain exceptional conditions of health, may be dangerous or even fatal. We can not suppose that the Legislature intended to enforce the rule under such circumstances, and yet there must be some tribunal competent to determine when such conditions exist. By its very nature

this power must ultimately rest in the courts, where all other rights of the citizen are determined and administered. Where legislative authority is given, the Board of Aldermen can determine within reasonable limits the existence of the general conditions justifying compulsory vaccination, and may make and enforce all reasonable regulations necessary to carry it into effect; but in case of resistence it can enforce it only by an appeal to the criminal jurisdiction of the courts. There the defendant has a right to be heard. It may be that his refusal to comply with a general ordinance might cast upon him the burden of proving whatever facts he might rely upon to exempt him from its operation; but this question is not now before us. I do not think that the election of anyone as superintendent of health or his employment as vaccinating surgeon would add anything to the weight of his testimony. It might give him the power to demand the vaccination of the individual, and to prosecute in case of refusal, but it would not carry with it any presumption of professional infallibility. He must take his chances before the jury like any other witness. I readily concede that these positions are generally filled by competent men, but we know that they are rarely held by physicians of large practice, because they do not pay enough to justify their acceptance. This is especially so where small-pox is prevalent. No well-established physician could afford to run the risk of contagion which would inevitably cause the loss of his practice. So strong is this feeling that it is sometimes necessary to send to other cities, and even other States, to obtain men willing to undertake the duty. I do not say this in any disparagement to them, but simply in justice to the resident physicians, who are entitled to all the credit due their character and professional standing.

I think this construction of the law is clearly in accord with the legislative intent, but if it were otherwise, I could

not come to any other conclusion. The Constitution of this State expressly declares "That we hold it to be self-evident that all men are created equal; that they are endowed by their Creator with certain unalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor and the pursuit of happiness." Art. I, sec. 1. It does not profess to *confer* these rights, but recognizes them as pre-existing and inherent in the individual by "Right Divine." Therefore any unlawful interference with them is in violation of the express letter of the Constitution.

When man entered the social compact he gave up a portion of his natural liberty in exchange for the protection of society, but only so far as was demanded by the general welfare. Even then there must be some limit. Suppose the Legislature should pass an act that all persons afflicted with certain diseases should be killed in order to prevent contagion, would any court permit its enforcement? Therefore, can we suppose that the Legislature either would or could enforce vaccination if under the peculiar conditions of health of the patient it might reasonably be expected to endanger his life? This discussion, however, is not essential to the determination of the case at bar, as I feel safe in basing my opinion upon a reasonable interpretation of the legislative will without the necessity of resorting to constitutional limitations.

FURCHES, J. I concur in this concurring opinion.