LOGAN A. ROGERS, APPELLEE, v. J. B. MORGAN, COUNTY CLERK, APPELLANT.

FILED JUNE 25, 1934. No. 29280.

*Paul F. Good,* Attorney General, *Max G. Towle, C. L. Clark* and *G. E. Price,* for appellant.

*Peterson & DeVoe, Burkett, Wilson, Brown & Van Kirk, John S. Bishop, Perry, Van Pelt & Marti* and *Barton Green,* contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LANDIS, District Judge.

LANDIS, District Judge.

This is an action for injunction to restrain J. B. Morgan

as county clerk of Lancaster county, Nebraska, the defendant and appellant herein, from proceeding under the provisions of House Roll 162, enacted by the legislature of 1933, in placing or printing the names of candidates for nomination or election on the ballots at the primary and general election in the two senatorial and six representative districts of Lancaster county. The claim of the plaintiff and appellee is that House Roll 162 is unconstitutional.

Issues were joined and hearing had below by the four district judges of Lancaster county sitting *en banc*. Their unanimous finding was that, in passing House Roll 162 and in the act itself, no attempt was made by the legislature to resubdivide the whole state into senatorial and representative districts; that no changes were made or attempted to be made in any counties of the state except Douglas and Lancaster; that the legislature in the enactment of the act did not apportion the whole state according to population, as required by section 5, art. III of the Constitution of Nebraska; that such apportionment was not done for the correction of inequalities of population of the whole state, and thereby violated the Constitution; that such apportionment cannot be made oftener than once in ten years, and this act wrongfully deprives the rest of the counties of the state of an apportionment for another ten years; and found generally for the appellee and against the appellant that the act was unconstitutional and void, that the appellee is entitled to the relief sought in his petition, that he has no adequate remedy at law in the premises, and that the defendant county clerk should be permanently restrained and enjoined from proceeding under House Roll 162. Judgment was entered on the findings, motion for new trial filed and overruled, and appeal taken to this court.

There is no dispute in the evidence, and it discloses that according to the 1930 federal census the population of the state was 1,377,963, a gain over the 1920 census of 81,591. Comparing the 1930 federal census with that of 1920 the following gain and loss in population in some of the 93

counties in Nebraska is found: Douglas 232,982, a gain of 28,458; Lancaster 100,324, a gain of 14,422; Scotts Bluff 28,644, a gain of 7,934; Adams 26,275, a gain of 3,654; Hall 27,117, a gain of 3,397; Red Willow 13,859, a gain of 2,425; Lincoln 25,627, a gain of 2,207; Boyd 7,169, a loss of 1,074; Brown 5,772, a loss of 977; Cherry 10,898, a loss of 855; Franklin 9,094, a loss of 973; Howard 10,020, a loss of 719; Nuckolls 12,629, a loss of 607; Phelps 9,261, a loss of 639; Webster 10,210, a loss of 712. The unit required to be applied as a basis of apportionment for the 33 senatorial districts is 41,756, and for the 100 representative districts is 13,779. If exact population equality were possible Douglas county with a population of 232,982 should have 16 representatives, a gain of 3 representatives, and which would leave a population of 12,518 unrepresented. Deduct the 4,852 aliens in Douglas county and there would remain 7,666 people unrepresented. Lancaster county with a population of 100,324 would have 7 representatives instead of 6, a gain of 1, and in addition there would be an excess population unrepresented of 3,871, and deducting the 1,384 aliens would still leave 2,487 people unrepresented. Platte county with a population of 21,181 has 1 representative, yet Pawnee county with 9,423 and Johnson county with 9,157 have each a representative. Districts 97 and 98 comprise Scotts Bluff county, district 97 has a population of 19,846, while district 98 has 8,798, and each district has 1 representative. Franklin county with 9,094, and Kearney county with 8,094, each have a representative, yet district 31 in Lancaster county with a population of 15,080 has only 1 representative.

In 1930 the aliens in the state were 12,556. Of these 4,852 were in Douglas county, 1,384 in Lancaster county, 1,182 in Scotts Bluff county, leaving 5,138 in the remaining 90 counties.

It appears that House Roll 162 made no changes in any of the districts in the state except Lancaster and Douglas counties and there changes were made only in boundary

lines; that the act did not apportion the whole state according to population, and that such apportionment was not done for the correction of inequalities of population of the whole state.

The mandate to the legislature for apportionment as to senatorial and representative districts is found in section 5, art. III of our Constitution. This is as follows: "At the regular session of the legislature held in the year nineteen hundred and twenty-one the legislature shall by law divide the state into senatorial and representative districts. In the creation of senatorial and representative districts, any county that contains population sufficient to entitle it to two or more senators or representatives shall be divided into separate and distinct senatorial and representative districts, as nearly equal in population as may be and composed of contiguous and compact territory. After the creation of such districts, one senator shall be elected from each senatorial district and one representative from each representative district. The basis of apportionment shall be the population excluding aliens, as shown by next preceding federal census. In like manner, when necessary to a correction of inequalities in the population of such districts, the state may be redistricted from time to time, but not oftener than once in ten years."

This constitutional requirement, which the people of the state have determined, is clear and unambiguous. It is based upon the principle of equality of representation which lies at the foundation of our system of government and requires that no voter shall exercise a greater voting power in the selection of the legislature than other voters. Actually, however, this principle is qualified by the impracticability of mathematical exactness in providing for representation which preserves absolutely the constitutional requirements.

This court has announced the sound rule in *State v. Moorhead,* 99 Neb. 527: "There is no doubt that the legislature may exercise a reasonable discretion in selecting the method of securing practical equality. But the

question whether constitutional requirements have been applied at all is a question for the courts."

The duty of determining the apportionment is reposed in the legislature by the Constitution and the court will inquire only to determine whether the legislature has exercised a constitutional discretion. The court has the jurisdiction to determine whether the constitutional requirements have been violated. It will not consider the motives that may have actuated the passage of an act except as it appears in the law itself or the journals. The validity of an act does not depend upon the motive of its passage, but whether and to the extent it is within the constitutional powers of the legislature to enact it. *State v. Moorhead, supra.* See annotation, 2 A. L. R. 1337, where is found a full and complete discussion of the authorities on the inequality of population or lack of compactness of territory as invalidating apportionment of representatives.

The forty-ninth session of the legislature convened Tuesday, January 3, and adjourned May 9, 1933. With the federal census of 1930 available, the matter of apportionment of legislative representation came up and resulted in the enactment of House Roll 162. Ten years had elapsed since the last apportionment, the state had changed in population and it was apparent that gross inequalities existed in many districts of the state. Appellant, by inference, admits in both his brief and the argument of his counsel that these inequalities exist. It is insisted, however, that these gross inequalities exist because of the immediate preceding apportionment act of 1921. But House Roll 162 adopts the apportionment act of 1921 completely except two counties. The argument amounts to what might be designated as a confession and avoidance. The question here is the effect of House Roll 162. The mandatory provisions under section 5, art. III of the Constitution, are: First. Was the basis of apportionment according to population excluding aliens based on the 1930 federal census? Second. Was the state redistricted to correct inequalities into districts as nearly equal in popu-

lation as may be and composed of contiguous and compact territory?

The matter of apportionment is so essentially legislative, restrained only by the Constitution, that courts interfere therein only when there appears a clear and palpable violation of the fundamental law. It clearly appears that the federal census of 1930 was not the basis of the apportionment. The gross inequalities in representation are so palpable that we can reasonably say that this census was almost completely ignored, not considered or applied to any appreciable extent. It is equally apparent that there were necessary corrections of inequalities in the population of many districts in the state and that House Roll 162 did not correct these.

Not every deviation from exact uniformity in apportionment of population into senatorial and representative districts of contiguous and compact territory will justify resort to the courts, or warrant the conclusion that the Constitution has been ignored. The court will be slow to set aside an apportionment which appears by any exercise of sound discretion to have followed the requirements of the Constitution, and to be a reasonable approximation to equality. But where it is manifest on its face, from mere inspection of the apportionment, that the Constitution has been transgressed, then the act cannot stand. When fair-minded men, from an examination of the act of apportionment, can entertain no reasonable doubt that there are grave, unreasonable and gross inequalities between different districts, the Constitution has been violated, and it is the clear duty of the court to so declare.

The record discloses that in the enactment of House Roll 162 the legislature made no attempt to resubdivide and reapportion the whole state into senatorial and representative districts, that no changes were made or attempted to be made in any counties of the state, except Douglas and Lancaster, that the whole state was not apportioned according to population as required by section 5, art. III of the Constitution, that such apportionment was

not done for the correction of the apparent gross inequalities of the population in the respective senatorial and representative districts of the whole state and thereby violated the Constitution, that such apportionment cannot be made oftener than ten years, that the act wrongfully deprives the rest of the counties of the state of an apportionment for another ten years and the correction of gross inequalities for a like period. The act is unconstitutional and void, hence the appellant county clerk should be permanently restrained and enjoined from proceeding thereunder. The unanimous decree of the four judges sitting *en banc* below is

AFFIRMED.