JONES v. CORDELL, Secy., et al.

No. 32561.   April 18, 1946.

*168 P. 2d 130.*

Sam Boorstin, of Tulsa, for petitioner.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for respondents.

PER CURIAM. Petitioner, Jenkin Lloyd Jones, brings this original action to test the constitutionality of Senate Bill 119 of the 1945 Legislature, S. L. 1945, p. 38, which reapportioned Senatorial Districts No. 7 and No. 9 consisting of Kay, Grant, Alfalfa, and Major counties. He seeks to restrain respondents, who are the state election officials, from proceeding under the allegedly invalid law.

1. Respondents contend that petitioner, being a citizen of Tulsa county and not a resident of either of the senatorial districts affected by the act, may not maintain this action. This question has been decided adversely to respondents' contention in Jones v. Freeman, 193 Okla. 554, 146 P. 2d 564.

2. The next question for decision is whether the Legislature may validly enact a senatorial apportionment law affecting less than all of the senatorial districts of the state. Upon the oral argument of this case the Assistant Attorney General, who presented the case on behalf of respondents, conceded that Senate Bill 119 is unconstitutional upon this ground. While we are not bound by his concession, we are of the opinion that his view is correct. As we pointed out in Jones v. Freeman, above, the framers of our Constitution made it the mandatory duty of the Legislature to reapportion the state for legislative purposes once in each decennial period, so that the people might have, as nearly as practicable, an equal voice in the government. While they did not so state, it is apparent that they contemplated that the entire state should be apportioned into proper senatorial districts by a single act. The proper reapportionment of the state, giving due effect to all of the various constitutional requirements, is at best a difficult and involved task, and one almost impossible to accomplish by piece-meal legislation. Each district is related to, and to some extent interdependent on, all the other districts, and to effect a proper law the whole scheme must be worked out at one time. Moreover, the Constitution provides that once a valid apportionment law is enacted, no further apportionment law may be passed until the next federal decennial census. Const., art. 5 §§ 9(a), 10(b), (c); Jones v. Freeman, above. Consequently, if Senate Bill 119, pertaining to Senatorial Districts 7 and 9, were to be held valid, it is clear that no further apportionment law affecting these districts could be enacted until after the next federal decennial census. Yet the Legislatures of 1947 and 1949, should they desire to enact a proper apportionment law covering the rest of the state, might find it impossible to fit the districts created by this act into a harmonious scheme for the proper apportionment of the entire state.

We find no cases directly in point on this question and counsel have cited none. The case most nearly in point is Rogers v. Morgan, 127 Neb. 456, 256 N. W. 1. In that case the Nebraska Legislature re-enacted the apportionment law which had been in effect during the preceding decennial period, but instead of making proper provision for the shifts in population which had occurred since the enactment of the former law, it made changes in only two districts. The court, in holding the law invalid because in conflict with constitutional provisions very similar to our own, said that it appeared that the "act did not apportion the whole state according to population and that such apportionment was not done for the correction of inequalities of the whole state". Nebraska also has a constitutional provision that apportionments may be made but once in each decennial period, and the court pointed out that to hold the law valid would preclude a proper apportionment of the remaining counties during the remainder of such period.

We hold, therefore, that Senate Bill

118 is invalid because in conflict with the requirement of our Constitution that the entire state be reapportioned into proper senatorial districts by a single act.

3. Respondents urge, however, that even though the law be invalid, we should decline to restrain its operation since it affords a more equal representation to the inhabitants of the two districts than is afforded by the present apportionment laws. Prior to the act, according to the Federal Census of 1940, District No. 7, consisting of Alfalfa and Major counties, had a population of 26,075, while District No. 9, consisting of Grant and Kay counties, had a population of 60,212. By Senate Bill 119 Grant county was taken from District No. 9 and made a part of District No. 7 so that under the new law District No. 7 has a population of 39,203 and District No. 9 has a population of 47,084. Since each district was given one Senator under the old law as well as the new, it is true that the act does tend to correct the inequality theretofore existing between the two districts.

Respondents say that in Jones v. Freeman we refused to enjoin an election under invalid laws, because to do so would have resulted in a greater inequality of representation than that already existing, and urge that we should do likewise here. But in Jones v. Freeman a different situation existed. The various invalid laws were of long standing and their constitutionality had never before been questioned in the courts. To have enjoined elections under all of them would have required the election to be held on the basis of the original apportionment made in the Constitution. So drastic a step, we thought, would have been contrary to the best interests of the state, and in our discretion we declined to take it. But we did not mean to intimate that we would refuse to strike down future invalid laws. Having pointed out in our former decision the constitutional requirements for valid legislative reapportionment laws, we think the public welfare will be best served by requir-

ing laws enacted thereafter to conform to those requirements.

Respondents are enjoined from proceeding under Senate Bill 119.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, and DAVISON, JJ., concur. RILEY, J., concurs in conclusion.

WELCH, J., dissents to the action of the court in assuming jurisdiction of this action as a proper method and manner to test the questions involved, as well as to the whole action of the court on the majority opinion.

———

RILEY, J. (concurring specially). I agree that Senate Bill 119, Twentieth Legislature, purporting by its title to reapportion Senatorial Districts 7 and 9, is unconstitutional and void.

The Legislature has failed since statehood to do its duty as enjoined upon it by the Constitution (art. 5, secs. 9, 10, and 11), to enact a senatorial apportionment measure. The matter was brought to the legislative attention by the Governor's message (January 2, 1945) devoted to the condition of the state; therein the Supreme Court's opinion in Jones v. Freeman et al., 193 Okla. 554, 146 P. 2d 564, in part, was reiterated.

The view was expressed in the Jones-Freeman Case that the legislative dereliction would result in destruction of the legislative department of government unless it be considered that apportionment for senatorial districts existed as provided by the Constitution and unless the election of Senators be restricted to the districts so provided.

This court held in the Jones-Freeman Case that no valid legislative act since statehood existed to provide for a legislative apportionment either as to the House of Representatives or the Senate. The writer hereof was of the opinion, however, that districts for the House of Representatives were validly and legislatively apportioned and created. The majority held otherwise. The

writer hereof was of the opinion that in the absence of a valid senatorial apportionment, the constitutional apportionment governed for the election of Senators. The majority held that the constitutional apportionment was temporary and had served its purpose.

But "A democratic state cannot 'surrender' sovereignty for the simple reason that it is not sovereign. Only a totalitarian or Fascist state is sovereign". Reves.

In Oklahoma, sovereignty is vested in the people, not in their servants and representatives who may be state officers.

"All political power is inherent in the people, and government is instituted for their protection, security, and benefit, and to promote their general welfare . . .". Sec. 1, art. 2, Const.

The state is based upon the preexisting and continuing collective individual rights. State v. Hay, 126 N.C. 999, 35 S.E. 459. Neither the individual's nor the collective right can be usurped or bartered away. Id.

In the former case the Supreme Court determined that the petitioner suffered a grievous wrong as to his representative right. However, the court did nothing to right the wrong; it issued no writ; it awarded no remedy. The court relied upon an assumption that the Legislature would do its duty that it had repeatedly failed to do, as to an apportionment for senatorial representation.

S.B. 119 is not a senatorial apportionment at all. It is an effort to form a more perfect district by a gerrymander for the re-election of a distinguished Senator. The act is a kind of special and local political security measure. Since the senatorial districts "shall remain unaltered until the next decennial period" this court should not consider the act as the apportionment of a senatorial district, for to do so would hamper a sufficient and valid apportionment in future. The act should be stricken down.

This court determined in the Jones-Freeman Case that petitioner's right as a legislative elector was minimized in the proportion of one-eighth to the mean or normal statewide elector's representative right.

If officers of the state abuse authority, redress is available for injuries to the private or public right. State Highway Com. v. Younger et al., 170 Okla. 614, 41 P. 2d 686.

This court has heretofore determined that a Legislature was not in lawful session. Simpson v. Hill, 128 Okla. 269, 263 P. 635, 56 A.L.R. 706.

This court has heretofore determined upon the eligibility of a legislative candidate. State ex rel. Cloud v. State Election Board, 169 Okla. 363, 33 P. 2d 20, 94 A.L.R. 1007.

It seems to the writer hereof that prior to the election in the offing the Supreme Court should determine whether there is a Senate or whether there are holdovers as a part of a Senate and what senatorial districts, if any, exist, so that if the holdover part of the Senate does not exist within contemplation of the Constitution, an entire membership of the Senate may be elected from districts created by the Constitution. If the only valid senatorial districts are those created by the Constitution, this court should now so hold so that candidates for the Senate may be elected from those districts.

The existence or nonexistence of districts from which senatorial representatives are to be nominated and elected in the ensuing election is vital to the existence of a government republican in form. A government republican in form contemplates three departments—legislative, executive, and judicial — and as to membership in the Senate, "The district must exist before it can be represented". Prouty v. Stover (1873) 11 Kan. 235, 107 A.L.R. 218. Such is the rule in Kansas as written by Mr. Justice Brewer.

It is argued the Supreme Court cannot look beyond the action of the Senate

to inquire whether Senators are legally entitled to membership because of the constitutional provision that the Legislature must canvass the returns of the elections and that each house may determine the qualifications of its own members. But what is included in the power conferred? Does the Senate's power of self-determination as to its members include the power to increase at will, membership in the Senate, or to determine membership without the necessity of districts validly created? If that is so, there is no necessity whatever for elections. Can the Senate enlarge its membership without limit? "Is it like an academy of science or a lodge of Odd Fellows, capable of indefinite expansion?" Prouty v. Stover, supra.

If so, a partisan majority may easily secure to itself the required two-thirds vote to overrule a veto by simply admitting new members. If the Senate can, without constitutional restraint, increase its membership, it can, by the same rule, decrease membership to that of an individual and provide him with an inheritable right in office that may be obtained by succession.

Failure to provide decennial statewide apportionment, joined with an act to reduce a senatorial district to a bailiwick by the process of a gerrymander, seems to provide some character of a purported right in an office that has not heretofore been recognized in American jurisprudence.

The Constitution requires a minimum of 44 senatorial districts, not only to nominate, but also to elect 44 Senators, together with an additional number of Senators as may be required by the population of any county. Article 5, sec. 9, Const.

Equality of representation in government and in all of its departments constitutes a right of the people. 14th Amend. Const. U.S.; Declaration of Independence; article 5, secs. 9, 10, Const. Okla.

Without due process rights may not be abridged by the enforcement of law.

No person within the state may be denied, by administration, the equal protection of the laws. 14th Amend. Const. U.S.

The election shall be free and equal (art. 3, sec. 7, Const. Okla.) and for the purpose of legislative representation in the Senate.

"It is the duty of courts to be watchful for the constitutional rights of the citizen and guard against any stealthy encroachment thereon". Boyd v. United States, 116 U.S. 616, 6 S. Ct. 524.

Since now the court strikes down the act under which is sought to elect a Senator from Kay county alone and another Senator from the counties of Alfalfa, Grant, and Major, it would seem to be in the public interest to determine also, prior to the ensuing election, the exact districts from which Senators may be elected; a failure to do so may make doubtful the future legislative product. The republican form of government, guaranteed to the state by the Federal Constitution, is imperiled. If by legislative omission of duty, the Senate, as such, has disintegrated, the Supreme Court may as well declare it, so that under the trial and error principle, the entire membership of the Senate may be accounted for from valid districts, or elected.

If, as held by the majority in Jones v. Freeman et al., supra, the constitutional apportionment was only temporary and has ceased to exist, the majority may as well declare there are now no senatorial districts and no Senators, and, of necessity, the entire membership of a Senate should then be elected from the state at large.

The majority declined to return the state to constitutionalism in the election of Senators because that would, they think, be "contrary to the best interests of the state" and "so drastic a step". However, the majority promise in future, if and when unconstitutional matters are presented to them within an undefined period of time and not acquiesced in, to "strike down invalid laws".

Neither the commonwealth nor the corporate state can be justified on the theory of fait accomplii.