GRIM v. CORDELL et al.

No. 32598.   May 21, 1946.

*169 P. 2d 567.*

Dudley, Duvall & Dudley, of Oklahoma City, for petitioner.

Mac .Q. Williamson, Atty. Gen., and Fred Hansen, First Asst. Atty. Gen., for respondents.

PER CURIAM.   This is an original proceeding in this court commenced by Orval Grim seeking a writ of mandamus to compel the respondents as members of the State Election Board to accept and file his notification and declaration as a candidate for the Democratic nomination for the State Senate from the Second Senatorial District at the 1946 Democratic primary election, and to cause his name to be placed upon the official primary election ballot.

The Second Senatorial District, composed of Beckham, Dewey, Ellis, and Roger Mills counties, was created by section 11, art. 5, of the Constitution, and was allotted two Senators.  In 1941, the Legislature divided the district into two nominating districts, making Dewey, Ellis, and Roger Mills counties a nominating district and providing that said counties should nominate a candidate for the State Senate in 1942 and each four years thereafter, and that Beckham county should constitute a nominating district and should nom-

inate a candidate for the State Senate in 1944 and each four years thereafter, and providing that the candidates so nominated should be voted for at the general election by the voters of the entire district. Chapter 2, Title 14, S.L. 1941, page 38, 14 O.S. 1941 § 9. The candidates for the State Senate were nominated and elected pursuant to said act in 1942 and 1944. In 1945, the Legislature amended said act so as to make Ellis and Dewey counties a nominating district and Beckham and Roger Mills counties a nominating district, and provided that Ellis and Dewey counties should nominate a candidate in 1946 and each four years thereafter and that Beckham and Roger Mills counties should nominate a candidate in 1948 and each four years thereafter, and that the candidate so nominated should be voted for at the general election by electors of the entire district. S.L. 1945, page 39.

Grim is a resident and elector of Roger Mills county and possesses all the qualifications of a State Senator as prescribed by section 17, art. 5, of the Constitution. He alleges in his petition, and contends here, that both acts, above cited, are unconstitutional, and that, in any event, the 1945 act is unconstitutional.

In Jones v. Freeman, 193 Okla. 554, 146 P. 2d 564, we pointed out that, under article 5, secs. 9, 9(a), 9(b), and 10(b) of the Constitution, it was the mandatory duty of the Legislature, after each decennial federal census, beginning in 1910, to divide the state into 44 senatorial districts, and that but one Senator should be elected from each district, except in counties having a population entitling them to more than two Senators, and we pointed out that no valid senatorial reapportionment act has been passed since statehood. And in Jones v. Cordell, 197 Okla. 61, 168 P. 2d 130, we held that the state cannot be reapportioned by piecemeal, but must be by a single act. While these cases do not decide the precise question here

presented, we think they are persuasive. The makers of the Constitution had in mind that the senatorial apportionment made by article 5, sec. 11, would serve only until the Legislature could perform its mandatory duty to reapportion the state at the first session after the Decennial Federal Census of 1910 was announced. See article 5, sec. 11, Constitution.

Our attention has been called to no provision of the Constitution expressly denying the Legislature the power to create nominating districts in senatorial districts. But the rule is that legislative authorities may be limited by those restrictions which are impliedly imposed. "Restrictions in a Constitution as to legislation are equally effective whether they arise by implication or are stated in express terms; and such restrictions may be found either in the language employed or in the evident purpose which was in view and the circumstances and historical events which led to the enactment of the particular provision as a part of the organic law." 11 Am. Jur. 897. To the same effect, see Trapp v. Cook, 24 Okla. 850, 105 P. 667; Thomas v. Reid, 142 Okla. 38, 285 P. 92; 12 C.J. 750; Cooley's Constitutional Limitations (8th Ed.) p. 355.

By article 5, secs. 9, 9(a) and 9(b), and 10 of the Constitution, the policy of the state with reference to legislative districts, Senate and House of Representatives, is outlined, and the formula by which the Legislature must be guided in enacting reapportionment acts is clearly stated, so that the legislative discretion is confined to narrow limits.

The duty of the Legislature to reapportion the state for senatorial purposes by one act at the next session after the announcement of the Federal Census of 1910, and at the first session following the announcement of each subsequent decennial federal census, and to provide for the election of but one Senator from each district, ex-

cept as provided for the populous counties entitled to more than two Senators, by necessary implication excludes the right to do so by piecemeal legislation, either by rearranging districts or by creating nominating districts within districts.

The respondents argue that the cases sustaining acts creating nominating districts for district judges are in point and sustain the right to create senatorial nominating districts. We do not agree. The applicable constitutional provisions are not similar. There is no such mandatory duty upon the Legislature to periodically redistrict the state for judicial purposes according to a clearly defined formula and to provide for but one district judge in each judicial district as there is with reference to senatorial districts. By article 7, sec. 9, of the Constitution, the authority of the Legislature to create district court judicial districts is granted and no limit is placed thereon.

The respondents also point out that there are other senatorial districts in which nominating districts have been created, and that the legislative construction of the Constitution in creating such nominating districts should be followed. In the light of the plain provisions of our Constitution pertaining to senatorial districts, referred to in Jones v. Freeman, above, this argument is not convincing. Legislative construction of the Constitution is given consideration by the courts only when the provision is ambiguous. Coyle v. Smith, 28 Okla. 121, 113 P. 944; 11 Am. Jur. 698; 12 C. J. 717. For many years the Legislature has construed the Constitution not to prevent them from redistricting the state for senatorial purposes by piecemeal legislation, but in Jones v. Freeman, above, we declined to follow such construction, since it is contrary to the plainly expressed provisions of the Constitution.

The reasons for withholding relief in Jones v. Freeman, supra, are applicable to the 1941 Act, in effect when that decision was promulgated. It follows that the 1945 Act above cited, is unconstitutional and void, and the petitioner is entitled to the writ. The candidates for State Senator in said district will be voted for by the qualified electors in the 1946 primary election under the 1941 Act, above cited.

Writ granted.

WELCH, CORN, DAVISON, and ARNOLD, JJ., concur. HURST, V.C.J., and RILEY, J., concur specially. BAYLESS, J., concurs in result. GIBSON, C.J., and OSBORN, J., dissent.

———

HURST, V.C.J. (concurring specially). I agree that we should issue the writ, but am of the opinion that we should go further and declare the 1941 Act unconstitutional, and direct that the Senators from said district be nominated and elected by the voters of the four counties.

The reason for withholding relief in Jones v. Freeman, above, does not exist in the present proceeding. No confusion or injustice would result from requiring the primary election to be held as required by the Constitution. An examination of the senatorial districts in which nominating districts have been created discloses much disparity between the population of the districts, and this injustice would be remedied by enforcing the constitutional requirement. For instance, Canadian and Oklahoma counties constitute the 14th Senatorial District, and Canadian county, with a population of 27,329, nominates a Senator and Oklahoma county, with a population of 244,159, nominates a Senator. Pottawatomie and Lincoln counties constitute the 13th Senatorial District, and Pottawatomie county, with a population of 54,377, nominates a Senator and Lincoln county, with a population of 29,529, nominates a Senator. Garvin, McClain, and Cleveland counties constitute the 19th Senatorial District, and Garvin county, with a population of 31,150, nominates a Senator and McClain and Cleveland coun-

ties, with a population of 46,933, nominate a Senator. Muskogee, Haskell, and McIntosh counties constitute the 27th Senatorial District, and Muskogee county, with a population of 65,914, nominates a Senator, and Haskell and McIntosh counties, with a population of 41,421, nominate a Senator. (The populations are according to the 1940 Federal Census.) If the constitutional requirement were enforced, each voter in the respective districts electing two Senators would have as much power in nominating and electing Senators as every other voter therein, and the discrimination in giving the voters of the nominating districts with the smaller populations from two to nine times as much power in nominating Senators would be discontinued.

---

RILEY, J. (concurring specially). I concur in the majority opinion to the extent that the 1945 Act of the Legislature is void. By the former judgment of this court, the 1941 Legislative Act is unconstitutional also. Jones v. Freeman, 193 Okla. 554, 146 P. 2d 564; Jones v. Cordell, 197 Okla. 61, 168 P. 2d 130.

The elective franchise should be extended in the ensuing primary and general elections to the qualified electors of Beckham, Roger Mills, Ellis, and Dewey counties, which constitute the senatorial district as provided and required by the Constitution.

Accordingly, the writ of mandamus, as sought, should issue.

---

WELCH, J. (concurring specially). I concur only by reason of the rules expressly adopted and promulgated in Jones v. Freeman, 193 Okla. 554, 146 P. 2d 564, and Jones v. Cordell, 197 Okla. 61, 168 P. 2d 130. Those decisions, and the rules and reasoning therein stated, so long as not overruled or disapproved or expressly limited, must definitely direct and compel us to the exact conclusion and result here reached, that is, the striking down of the

1945 Act while leaving standing the 1941 Act.

DAVISON, J., concurs herein.

---

BAYLESS, J. (concurring in result). I concur in the conclusion reached by a majority of the court that permits the issuance of the writ and that substantially grants petitioner the relief sought, but because I think this conclusion should have been reached on other grounds I feel compelled to state my views.

I see nothing in our Constitution that precludes the division of senatorial and representative districts into separate nominating districts. The scheme for calculating the representation ratio and the distribution of legislative representation by districts thus arrived at allows for more than one Senator and more than one Representative from a given county and at the same time permits the division of a county into more than one senatorial or representative district and clearly allows the combining of counties to form senatorial and representative districts. Section 9, art. 5, Constitution of Oklahoma. Geographical considerations that did not violate the paramount legislative ratio would not, it seems to me, be improper reasons for making nominating districts within such legislative districts. The Legislature has so construed the Constitution, and its view on this matter, when otherwise within constitutional bounds, is entitled to weight in determining this matter.

I regard the opinion in Jones v. Freeman, 193 Okla. 554, 146 P. 2d 564, as construed and followed in Jones v. Cordell, 197 Okla. 61, 168 P. 2d 130, as having, in a sense, frozen the legislative apportionment as it existed when Jones v. Freeman was filed. This fixed status was not adopted as an approval, but rather that no such unconstitutional practices as had resulted in that status should hereafter obtain, but that, relying upon the Legislature's concept of its duty, an over-all correction should be made. Those opinions show that piecemeal legislation on this subject is

not likely to produce order out of the status found to exist.

In addition to the foregoing reasons, there is one that is of even greater importance. There is no right mentioned in the Federal Constitution, sec. 4, art. 4, or in our Constitution, that is more sacred to the citizenship as a whole than the republican form of government we have adopted, and the right of suffrage has especial protection, section 6, art. 1, section 4, art. 2, and section 7, art. 3, Constitution of Oklahoma. If I am correct in my assumption that districts may be divided into nominating districts, I am firmly convinced that all of the implications supporting a representative republican form of government dictate that the right to cast a vote at a regularly scheduled election for legislators cannot be abrogated or infringed. Insofar as this particular senatorial district is concerned, the status in which it found itself as a result of the 1941 Act creating nominating districts brought into operation a schedule of elections that entitled the voters of Roger Mills county to vote to nominate candidates for the State Senate each four years. The electors of this county exercised that right in 1942 and have a right to do the same in 1946 and in similar order. The only authority for altering this is reapportionment of the state as provided in the Constitution and explained in Jones v. Freeman, above. Any single act of the Legislature, as in this instance, detaching this county from the nominating district wherein it is entitled to vote in 1946, and attaching it to another nominating district that will not vote on nominations until 1948, is a serious breach of the right of suffrage of the electors in this county. If these piecemeal alterations are tolerated as being within constitutional sanction, there is nothing then to prevent another alteration of the nominating districts in this senatorial district prior to the 1948 election to again postpone the electors' right to nominate. The situation presently presented by the 1945 Act may fall within the rule announced in Hunt v. Menard, 2 Bartl. Cas. 477, in which it was held that if, after a congressional election, the state is redistricted and a vacancy occurs, the vacancy should be filled by the suffrage of the voters of the old district and not by the suffrage of the electors of the new district, otherwise a portion of the electors of the old district would be left without the right of suffrage with respect to their representation. 20 C.J. 89, sec. 67. If the nominations in this senatorial district should occur this year under the 1945 Act, the result would be that one Senator representing this district would be elected at the nomination of one county, under the 1944 election, and two counties, under the 1946 election, while one county would be entirely without representation through any nomination made by it in either election. In my opinion this would be an intolerable situation and a gross denial of the right of suffrage of the electors of this county with respect to their representatives in our republican form of state government.

Therefore, I firmly favor permitting the electors of this county to participate in the nomination election of 1946 for State Senator, under the scheme set up under the 1941 Act.

I, therefore, concur in this issuance of the writ.

———

OSBORN, J. (dissenting). I regret I am unable to concur in the majority opinion. Under section 11, art. 5, of the Constitution of Oklahoma, the Second Senatorial District was created, composed of Beckham, Dewey, Ellis, and Roger Mills counties, with the right to elect two Senators. The 1941 Legislature (S.L. 1941, Title 14, p. 38) divided said senatorial district into two nominating districts, providing that:

"Roger Mills, Ellis and Dewey counties shall constitute one nominating district and shall nominate a candidate for the State Senate in the primary election 1942, and each four years thereafter; Beckham county shall constitute a nominating district and shall nomi-

nate a candidate for the State Senate in said district at the primary election of 1944, and each four years thereafter; and the candidates so nominated in said districts shall be voted for at the general election following such nomination by all of the qualified electors in said Second Senatorial District."

The 1945 Legislature (S.L. 1945, Title 14, p. 39) amended said law and provided:

"Ellis and Dewey counties shall constitute one nominating district and shall nominate a candidate for the State Senate in the primary election of 1946, and each four years thereafter; Beckham and Roger Mills counties shall constitute a nominating district and shall nominate a candidate for the State Senate in said district at the primary election of 1948, and each four years thereafter; and the candidates so nominated in said districts shall be voted for at the general election following such nomination by all of the qualified electors in said Second Senatorial District."

Petitioner, Orval Grim, a resident of Roger Mills county, and being otherwise eligible, filed with the State Election Board his notification and declaration of his candidacy for the office of State Senator, which notification and declaration said Election Board declined to accept and approve by reason of the residence of petitioner in Roger Mills county, predicating its action upon the provisions of the above quoted 1945 Act.

Petitioner has filed this proceeding for a writ of mandamus directing the State Election Board to receive, file, and approve his notification and declaration and place his name upon the official primary election ballot as a Democratic candidate for the office of State Senator from said Second Senatorial District.

He first contends that the Legislature was without authority to create nominating districts in said senatorial district and that the Acts of 1941 and 1945 violate article 3, secs. 5 and 7, and article 5, sec. 32, of the Constitution. He frankly concedes that unless there is some distinction between the power of the Legislature to create nominating districts in senatorial districts and the power of the Legislature to create nominating districts in judicial districts, this court has directly passed upon his legal contention adversely to him in the cases of Glasco v. State Election Board (1926) 121 Okla. 119, 248 P. 642; Monroe v. McNeill (1927) 122 Okla. 297, 255 P. 150, and Johnson v. State Election Board, 197 Okla. 211, 167 P. 2d 891. Those decisions, except the last mentioned, have been promulgated for many years and have been acquiesced in, and the Legislature, both as to judicial districts and as to senatorial districts, has apparently relied thereon, and for many years no one has questioned the soundness thereof. In 1913 separate nominating districts in the Thirteenth Senatorial District (14 O.S. 1941 § 21) and in the Fifteenth Senatorial District (14 O.S. 1941 § 22) were created. In 1917, in the Fourteenth Senatorial District (14 O.S. 1941 § 31), and in 1925 in the Seventeenth and Twenty-Seventh Senatorial Districts (14 O.S. 1941 §§ 41 and 61), and in 1933 in the Ninteenth Senatorial District (14 O.S. 1941 § 51), and in 1941 in the Sixth Senatorial District (14 O.S. 1941 § 10), separate nominating districts were created, and in each of those districts a Senator is to be elected at the election to be held during this year. As to each of said districts, no question has ever been raised as to the validity of the action of the Legislature in creating nominating districts within said senatorial districts. It may be noted also that many of the judicial districts of the state provide for the election of two or more district judges, and that various nominating districts have been therein created and are now existing and no question has been raised as to the validity of the action of the Legislature in the creation of specific nominating districts therein.

Thus it appears that there has been continued action and continued acquiescence in the previous holdings of this court relating to the specific question, and the Legislative, Executive, and Judicial Departments of the State, as

well as the officeholders and people, have long acquiesced in said construction. To overturn the same, or by legalistic or specious reasoning to iterate a fine-spun distinction, theoretical or nonexistent, would result in great hardship, confusion, and positive harm. I am of the opinion, therefore, that we should adhere to our previous opinions on this point.

It is further contended that the act in question is violative of section 17, art. 5, of the Constitution, providing that:

"Members of the Senate shall be at least twenty-five years of age, and members of the House of Representatives twenty-one years of age at the time of their election. They shall be qualified electors in their respective counties or districts and shall reside in their respective counties or districts during their term of office."

It is said that the petitioner lives within the territorial boundaries of the Second Senatorial District and that the act limits and restricts his right to be a candidate by requiring that he reside within a given portion of said senatorial district, and thereby impinges his constitutional right. He cites the following authorities: People v. Board of Election Com'rs of Chicago, 221 Ill. 9, 77 N. E. 321; People v. McCormack, 261 Ill. 413, 103 N.E. 1053; McAlpine v. Dimick, 326 Ill. 240, 157 N.E. 235; Gates v. Long, 172 Tenn. 471, 113 S.W. 2d 388; Jansky v. Baldwin, 120 Kan. 338, 243 P. 302 (47 A.L.R. 476, anno. page 481); 42 Am. Jur., sec. 38, p. 909.

But in Glasco v. State Election Board, supra, the question was specifically determined adversely to his contention.

It may be pointed out that this senatorial district was created by the Constitution with the right to elect two Senators, and that the creation of separate nominating districts, with the election by all the electors of the district as a whole, constitutes in no way an attempt to reapportion said senatorial district as discussed in the case of Jones v. Freeman, 193 Okla. 554, 146 P. 2d 564, and the recent case of Jones

v. Cordell, Secretary, decided on the 18th day of April, 1946, 197 Okla. 61, 168 P. 2d 130. The district still is entitled to elect two Senators. Unlike Jones v. Cordell, supra, there was no attempt to change either the representation or the geographical territory of the district. The reapportionment provisions of the Constitution have no application, either expressly or by implication.

For these reasons, I respectfully dissent.

Mr. Chief Justice GIBSON concurs herein.