Paul W. REED, Jr., Plaintiff,

v.

The STATE ELECTION BOARD of the State of Oklahoma, Clee Fitzgerald, Chairman, Herbert F. Hewett, Vice Chairman, Leo Winters, Secretary, Defendants.

No. 39938.

Supreme Court of Oklahoma.

Feb. 13, 1962.

Rehearing Denied Feb. 19, 1962.

Frank Gibbard and Millard Lowrance, Sulphur, for plaintiff.

John E. Wagner, Oklahoma City, Robert W. Blackstock, Bristow, for defendants.

J. Howard Edmondson, Governor, Oklahoma City, amicus curiae, Norman E. Reynolds, Jr., Oklahoma City, of counsel.

Leon S. Hirsh, James C. Harkin, Paul Johanning, Oklahoma City, amici curiae for Senator Walt Allen and others.

Sid White, Oklahoma City, amicus curiae.

IRWIN, Justice.

The majority of the State Election Board, being the Chairman and Vice-Chairman, issued a statement which, in effect, provided that said Board would not accept filings of candidates in 1962 who desire to be elected to either house of the Oklahoma Legislature.

Paul W. Reed, Jr., an announced candidate for the Oklahoma State Senate, 36th Senatorial District, brought this original action against the State Election Board and seeks a Writ of Mandamus which, in effect, would require said Board to accept his filing for the office of State Senator, 36th Senatorial District, and to conduct elections in 1962 for said office.

The State Election Board contends the Writ should not issue and in its answer alleges: That in Jones v. Winters (Okl.), 365 P.2d 357, it had been restrained from acting under the Senate Apportionment Act of 1961. The Board further alleged that the Legislature has not since statehood, obeyed its constitutional duty to reapportion the Senate by enactment of apportionment

laws based upon each succeeding decennial Federal census; that several piecemeal legislative acts, altering or creating individual senatorial districts, have been challenged and stricken down by the Supreme Court; that there has been no general senate apportionment act since the adoption of the Constitution and all other legislation in regard thereto, including the piecemeal acts, have been held to be in violation of and not in compliance with the Constitution; that no existing senatorial apportionment law complies with the Constitutional mandate requiring substantial equality of representation.

The cause was submitted to the Court on briefs of counsel and oral argument. Although several propositions have been submitted, there are basically only two, which are: (1) Should this Court issue a Writ ordering and commanding the accepting of filings of candidates for the State Senate and conduct elections for such offices in 1962? (2) If such writ is issued, what apportionment should be followed?

The first time that the apportionment laws were challenged in this Court was in 1943 in Jones v. Freeman, 193 Okl. 554, 146 P.2d 564, wherein Jones brought an action to test the various legislative apportionment acts enacted since the adoption of the Constitution. It was alleged that all of such acts were contrary to the express constitutional provisions, and petitioners sought (unless a valid law was enacted meanwhile) to require the next election to be held under the apportionment as made by the Constitution.

Article 5, Secs. 9 and 9(a) provide for the membership of the Senate, their terms, Senatorial districts and additional senators. Article 5, Sec. 10(b) of the Oklahoma Constitution, provides that the apportionment of this State for members of the Legislature shall be made at the first session of the Legislature after each decennial Federal census. Article 5, Sec. 11, provides that until the apportionment is made by the Legislature after the next Federal decennial census, the State, except as otherwise pro-

vided, shall be divided into thirty-three senatorial districts, each of which shall be composed of the counties as named, shall be numbered and elect senators as follows. The senatorial districts, the counties comprising the districts and the number of senators for each district were listed.

The above constitutional provisions were discussed in the Jones v. Freeman case, supra, and we pointed out that there had been no general Legislative apportionment of the entire State for senatorial purposes. It was also pointed out that several legislative acts creating or altering certain senatorial districts had been passed but that many of the senatorial districts created by the Constitution remained unaltered. After discussing why the Constitutional apportionment only should not be followed, when to do so would merely increase the wrongs sought to be prevented, the Court refused to issue the writ requiring the next election to be held under the apportionment as made by the Constitution and elections were held under the Constitution as supplemented by Legislative enactments.

In the above case we held:

"The duty to provide for legislative apportionment is legislative in nature, and the Supreme Court may not, in an original action to test the constitutionality of any such apportionment act, make the apportionment."

"The Supreme Court may not compel the Legislature to perform its mandatory duty to pass proper and timely legislative apportionment acts."

Subsequent to the decision of Jones v. Freeman, supra, the Legislature enacted laws which re-apportioned certain senatorial districts without re-apportioning the entire state for senatorial purposes.

In Jones v. Cordell, 197 Okl. 61, 168 P.2d 130, an action was brought to test the constitutionality of a 1945 Legislative enactment which re-apportioned only two of the senatorial districts. It was contended that in Jones v. Freeman, supra, we refused to enjoin an election under invalid laws, be-

cause to do so would have resulted in a greater inequality of representation than that already existing, and it was urged that the 1945 Legislative enactment should be followed as to do so would result in a greater equality of representation.

We rejected this contention and in holding the 1945 Legislative enactment invalid, pointed out that a different situation existed in Jones v. Freeman, supra, and said, "The various invalid laws were of long standing and their constitutionality had never before been questioned in the courts. To have enjoined elections under all of them would have required the election to be held on the basis of the original apportionment made in the constitution. So drastic a step, we thought, would have been contrary to the best interests of the state, and in our discretion we declined to take it. But we did not mean to intimate that we would refuse to strike down future invalid laws."

In Grim v. Cordell, 197 Okl. 144, 169 P.2d 567, we prohibited the conduction of elections under a Legislative enactment which changed the nominating district in a senatorial district without apportioning the entire state for senatorial purposes.

Since 1941, all senatorial elections have been conducted pursuant to the apportionment laws for the State Senate under laws existing in 1941.

In 1961, the Legislature by the purported enactment of Senate Bill No. 179, attempted to re-apportion the entire state for senatorial purposes. However, in Jones v. Winters, Okl., 365 P.2d 357, we restrained the State Election Board from proceeding under said act for the reason it was not lawfully passed.

An analysis of the above cases disclose that there has been no legislative enactment passed since statehood apportioning the entire state for senatorial purposes; that several acts altering or creating certain senatorial districts have been passed but that many of the senatorial districts have remained unchanged; that the laws relating to the apportionment of the State Senate were not challenged until 1943, and

when challenged in Jones v. Freeman, supra, this Court refused to prohibit the conducting of elections under the apportionment laws existing in 1941; that the Court has prohibited the conduction of elections under all Legislative enactments apportioning the State Senate since the Jones v. Freeman case, because such acts did not apportion the entire state for senatorial purposes; that since 1941 all elections for the state senate have been conducted pursuant to the apportionment laws existing in 1941.

Therefore, if elections are to be held, such elections must be pursuant to the apportionment laws existing in 1941, the same being the apportionment laws under which all elections since 1941 have been conducted; or, under the senatorial apportionment provided by Article 5, Sec. 11, of the Constitution.

There is a distinct difference between the instant action and Brown v. State Election Board, Case No. 39,930, promulgated this date, 369 P.2d 140. That case involves apportionment of the House of Representatives and several general apportionment laws have been enacted by the Legislature apportioning the entire state for the House of Representatives and the apportionment made by the Constitution has not been followed since 1911. In the instant action, there has been no general apportionment of the entire state for Senatorial purposes and many of the Senatorial Districts created by the constitutional apportionment are still in existence and elections have been conducted pursuant thereto since statehood.

No one seriously contends that the 1962 elections for the State Senate should be conducted under Article 5, Sec. 11, of the Constitution, since to do so would not only create an unjust and inequitable condition in the 36th Senatorial District but would also create such condition statewide; it would increase the wrongs sought to be prevented. We decline to further diminish the representation of an underrepresented group or to increase the representation of

an overrepresented group, under the guise of affording relief.

We therefore hold that if elections for the State Senate are to be held in 1962, such elections should be conducted under the apportionment laws existing in 1941, the same being the apportionment laws under which all elections since 1941 have been conducted.

Having determined what apportionment laws are to be followed, if an election is to be held, we will now consider whether a writ should issue ordering and commanding the accepting of filings of candidates for the State Senate and the conducting of elections for such offices in 1962.

In Brown v. State Election Board, No. 39,930, 369 P.2d 140, promulgated this date, Brown filed an application for a writ of mandamus and prayed that a writ issue ordering and commanding his filing as a candidate for the House of Representatives be accepted. Oral arguments for the Brown case and the present action were heard on the same date and similar contentions why the writ should issue, or should not be issued, were presented in the Brown case as in the instant action. In the Brown case we issued a writ.

A reiteration of the arguments, contentions and applicable law in the instant action would serve no useful purpose. We therefore adopt the discussion of said arguments, contentions and applicable law set forth in the Brown case, in so far as applicable to the case at bar.

The writ of mandamus is granted and the Secretary of the State Election Board, and his successors in office, if any, are specifically directed to receive filings for the offices of State Senate pursuant to the election laws of this State, under and pursuant to Article 5, Sec. 11, of the Constitution, and as the same has been supplemented by Legislative Enactments, the same being the apportionment laws in existence in 1941 and under which all elections since that time have been conducted, and to proceed to comply with the ministerial and other functions required by the election laws of this State, and it is so ordered.

The other defendants herein, Clee Fitzgerald, Chairman, and Herbert Hewett, Vice Chairman, and their successors, if any, and each of them, are directed to utilize the apportionment laws of the State of Oklahoma in existence in 1941, as above set forth, in performing their duties and to otherwise comply with their legal duties under the election laws of this State, and it is so ordered.

In the event this opinion is deemed uncertain or not sufficiently clear as to the specific duties enjoined by law on any of the defendants, and their successors, if any, and on account thereof there is any doubt as to which acts these defendants, or either of them, should perform, or be required to perform, and if the time comes when this opinion should be clarified as to the detail of any such act or function of the defendants, or either of them, in respect to the 1962 elections, or preliminaries to such elections, then in either such event any interested person may request permission to file in this action an application to the court to make such matters clear and to issue proper order, or orders, in reference thereto, and any such application filed will be considered with appropriate dispatch.

Writ granted.

BLACKBIRD, V. C. J., and WELCH, DAVISON, JOHNSON and JACKSON, JJ., concur.

WILLIAMS, C. J., concurs in result by reason of stare decisis.

HALLEY and BERRY, JJ., dissent.